**Frank P. DADDONA and Catherine M. Daddona, h/w, Appellants**

v.

**Bhagwant S. THIND, PennDot, Sun Company, Inc., Trexler Plaza, Imperial Excavating, Sunburst Property Management, Isri Isringhausen, Inc., JRB, Inc., Upper Macungie Township, Kawasaki Construction Machinery Corp. of America.**

Commonwealth Court of Pennsylvania.

Argued Dec. 15, 2005.

Decided Jan. 31, 2006.

John P. Karoly, Jr., Allentown, for appellants.

Thomas Finarelli, Philadelphia, for appellee, Kawasaki Construction Machinery Corp. of America.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

In this appeal we review the conduct of a products liability trial. A jury rejected Frank P. Daddona (Daddona) and Catherine M. Daddona's (collectively, Plaintiffs) claim that a front-end loader manufactured by Kawasaki Construction Machinery Corporation of America (Kawasaki) was defectively designed. Plaintiffs appeal an order of the Court of Common Pleas of Lehigh County (trial court) that denied their post-trial motion seeking a new trial. We affirm.

## I. Factual and Procedural Background

In January 1996, Daddona attempted to remove snow from the parking area of Trexler Plaza, a truck stop and gas station in Fogelsville, Pennsylvania, using a front-end loader manufactured by Kawasaki. The loader was equipped with a rigid bucket attachment. As Daddona drove forward, the bucket struck a metal drainage grate. As a result of the sudden stop, Daddona struck his head inside the cab of the loader.

Plaintiffs subsequently filed suit against several defendants. Essentially, Plaintiffs' action involved two claims: one against the owners of Trexler Plaza and other defendants for allegedly causing the accident, and the other against Kawasaki for allegedly causing Daddona to suffer enhanced injuries. Kawasaki pursued cross-claims for contribution against several co-defendants. During the course of the litigation, several defendants were dismissed at the summary judgment stage. Plaintiffs settled with all remaining defendants, with the exception of Kawasaki.

The trial court subsequently granted Kawasaki's motion to bifurcate the case,

and a jury trial on the issue of liability commenced on September 22, 2004. Plaintiffs proceeded on a theory of strict liability, asserting Kawasaki's defective design rendered the front-end loader insufficiently crashworthy. In turn, Kawasaki pursued its cross-claims for contribution against the settling defendants.

Eight days later, and after 48 minutes of deliberation, the jury returned a unanimous verdict in favor of Kawasaki, finding the front-end loader was not defective or unsafe for its intended use, the first special interrogatory. As a result, the jury did not answer the remaining 14 special interrogatories concerning whether the defect was a substantial factor, the presence of an enhanced injury, the feasibility of the proposed alternative design, whether the proposed alternate design would have prevented the enhanced injury, and the liability of the settling defendants. Further, because of the bifurcation, damage issues were not submitted to the jury.

Plaintiffs subsequently filed a motion for post-trial relief seeking a new trial, which set forth 31 allegations of error. Plaintiffs' brief in support of their post-trial motion, however, addressed only seven of those alleged errors. As a result, the trial court determined Plaintiffs waived the remaining 24 issues. *See, e.g., Jackson v. Kassab,* 812 A.2d 1233 (Pa.Super.2002) (failure to brief issues raised in post-trial motion results in waiver). The trial court subsequently issued a thorough and thoughtful opinion disposing of the seven issues properly preserved. Ultimately, the trial court denied Plaintiffs' motion for a new trial. This appeal by Plaintiffs followed.[1]

## II. Products Liability/Crashworthiness

 "Well-settled law in this Commonwealth provides that a manufacturer or seller will be held strictly liable if a defect in its product causes injuries to a user. A product is defective if it is unsafe for its intended use." *Hadar v. AVCO Corp.,* 886 A.2d 225, 228 (Pa.Super.2005). To prevail in a products liability case, a plaintiff must prove: the product is defective; the defect existed when it left the defendant's hands; and, the defect caused the plaintiff's injury. *Id. See also* Restatement (Second) of Torts § 402A (1965). The threshold inquiry in all products liability cases is whether there is a defect. *Dep't of Gen. Servs. v. United States Mineral Prods. Co.,* 809 A.2d 1000 (Pa.Cmwlth. 2002). In any product liability case grounded in strict liability, the product, and not the manufacturer's conduct, is on trial. *Hutchinson v. Penske Truck Leasing Co.,* 876 A.2d 978 (Pa.Super.2005).

 "Crashworthiness" is a subset of products liability law and usually arises in the context of a vehicular accident. *Harsh v. Petroll,* 840 A.2d 404, 417 (Pa.Cmwlth. 2003), *aff'd,* 584 Pa. 606, 887 A.2d 209

---

1. Plaintiffs actually filed their appeal with the Superior Court. Observing that the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) and Upper Macungie Township (Township) were parties to the appeal, however, the Superior Court transferred the case to this Court in April 2005.

 By way of brief procedural background, the owners of Trexler Plaza joined PennDOT and the Township as additional defendants on theories of negligence and contribution and/or indemnification. The trial court granted summary judgment in the Township's favor in August 2003. Around the same time, the trial court granted partial summary judgment in favor of PennDOT with respect to Plaintiffs' claims. However, the trial court denied summary judgment as to the claims for contribution or indemnification by the Trexler Plaza defendants. Thus, PennDOT remained a party to this case until trial. As noted, the jury did not reach the issue of PennDOT's liability. As a result, by order of October 31, 2005, this Court granted PennDOT's motion to dismiss it as a party to this appeal.

(2005). The term crashworthiness means the protection a motor vehicle affords its passenger against personal injury or death as a result of a motor vehicle accident. *Id.* The doctrine imposes liability on the manufacturer not for causing the accident, but rather for failing to minimize the injuries or even increasing the severity of the injuries sustained in an accident brought about by a cause other than the alleged defect. *Habecker v. Clark Equip. Co.*, 36 F.3d 278 (3d Cir.1994). "[T]he crashworthiness doctrine permits a plaintiff to recover for enhanced injuries, i.e., only for those injuries he can prove he would not have sustained if he had been riding in a crashworthy vehicle." *Oddi v. Ford Motor Co.*, 234 F.3d 136, 142 (3rd Cir.2000), (citation omitted). "If enhanced injuries cannot be shown, then no liability exists as to the manufacturer." *Id.*

In order to establish a cause of action on a theory of crashworthiness, a plaintiff must show: the design of the product was defective; an alternative, safer design practicable under the circumstances existed; what injuries, if any, the plaintiff would have suffered if the alternative design was used; and the defective design caused or exacerbated specific injuries. *Barker v. Deere & Co.*, 60 F.3d 158 (3rd Cir.1995).[2]

In this case, Plaintiffs alleged the front-end loader manufactured by Kawasaki was defectively designed rendering it uncrashworthy. Plaintiffs proposed an alternative, safer design that consisted of a three-point seat belt for the operator's seat, and padding for the front-end loader's rollover protection system (ROPS), where they claimed Daddona struck his head. Plaintiffs alleged, if Kawasaki equipped the front-end loader with a three-point seat belt, Daddona would not have struck the ROPS. They further claimed padding on the ROPS would have lessened or eliminated the injury. Plaintiffs alleged, as a result of the lack of a three-point seat belt and padding on the ROPS, Daddona sustained significant head injuries, including a physical injury, traumatic brain injury, permanent cognitive injuries and distress anxiety.

### III. Standard/Scope of Review

When responding to a request for a new trial, a trial court must follow a two-step process. *Harman ex rel. Harman v. Borah*, 562 Pa. 455, 756 A.2d 1116 (2000). First, it must decide whether one or more mistakes occurred at trial. *Id.* Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial. *Id.* The harmless error doctrine underlies every decision to grant or deny a new trial. *Id.* A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake. *Id.*

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two prong analysis. *Id.* First, we examine the decision of the trial court that a mistake oc-

---

**2.** Recently, in *Harsh,* our Supreme Court observed,

> Although this Court has not specifically adopted the [crashworthiness] doctrine, it has abided the adoption by the intermediate appellate courts, and crashworthiness theory is widely accepted as a valid basis to support manufacturer liability. *See generally* Restatement (Third) of Torts, Products Liability § 16 & cmt. a (1997). There is continuing controversy, however, regarding the appropriate elements of a claim, ... and concerning whether crashworthiness claims grounded on alleged design defect are appropriately administered as a subset of strict liability and/or negligence theory....

584 Pa. at 610, 887 A.2d at 211, n. 1.

curred. In so doing, we must apply the appropriate standard of review. *Id.* If the alleged mistake involved an error of law, we must scrutinize for legal error. If, on the other hand, the alleged mistake involved a discretionary act, we must review for an abuse of discretion. *Id.* If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial as the trial court cannot order a new trial where no error of law or abuse of discretion occurred. *Id.*

On appeal, Plaintiffs raise seven issues, the majority of which contain numerous sub-issues. In all, Plaintiffs present more than 25 issues for our review.[3]

### IV. Rebuttal to Closing Argument

Plaintiffs first contend the trial court abused its discretion in refusing their requests to present rebuttal to Kawasaki's closing argument. As a basic principle, Plaintiffs assert, they were entitled to rebut Kawasaki's closing. We disagree.

■ The right to present opening and closing argument is part of the constitutional right to representation by an attorney in civil cases, and no court may deny a party's counsel the right to argue its case before a jury. *See Nestor v. George,* 354 Pa. 19, 46 A.2d 469 (1946); *Speer v. Barry,* 349 Pa.Super. 365, 503 A.2d 409 (1985); *Turley v. Hennis Freight Lines, Inc.,* 263 Pa.Super. 523, 398 A.2d 699 (1979). In-

deed, Pennsylvania Rule of Civil Procedure No. 225, entitled "Summing Up," states: "[a]ttorneys for each party ... may make an opening address to the jury and may also make an address to the jury after the close of the testimony."

■ Pennsylvania Rule of Civil Procedure No. 223(3), however, authorizes a trial court to make and enforce rules regulating "the *number* and length of addresses to the jury." *Burish v. Digon,* 416 Pa. 486, 491, 206 A.2d 497, 499 (1965) (emphasis in original). As such, "there is discretion in the trial court to regulate addresses by counsel to the jury; and so long as no clear abuse of discretion appears and no right of due process has been violated, the court's exercise of discretion will not be reversed." *Speer,* 503 A.2d at 411. *See also Clark v. Phila. Coll. of Osteopathic Med.,* 693 A.2d 202 (Pa.Super.1997) (trial court retains discretion over presentation of closing speeches); *Fed. Land Bank of Balt. v. Fetner,* 269 Pa.Super. 455, 410 A.2d 344 (1979) (extent to which counsel's final argument is permitted in civil cases is within trial judge's discretion).

■ Particularly pertinent here, where each side is given a single opportunity of equal length to address the jury, no abuse of discretion is present. *See D'Orazio v. Parlee & Tatem Radiologic Assocs., Ltd.,*

---

**3.** Where an appellant raised 16 issues in its appellate brief, our Superior Court directed the appellant to the insights of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit, noting:

Judge Aldisert has stated that, "When I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that it is an irrebutable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy."

*Kenis v. Perini Corp.,* 452 Pa.Super. 634, 682 A.2d 845, 848 n. 3 (1996) (quoting *United*

*States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982) (citation omitted)). *See also Caln Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.,* 840 A.2d 484 (Pa.Cmwlth.2004) (raising 22 issues hinders a court in its preparation of legal analysis); *Carpinet v. Mitchell,* 853 A.2d 366, 369 n. 2 (Pa.Super.2004) ("we have said many times that urging a multitude of errors on appeal is generally seen as bad appellate strategy because the weaker or non-meritorious issues tend to detract from the more meaningful issues which may support a finding of reversible error.")

850 A.2d 726 (Pa.Super.2004). In *D'Orazio,* our Superior Court stated:

> While different judges might allocate different amounts of time for closings, we will not second-guess the reasonable determination of the trial judge, who heard the trial and saw the lawyers in action when making his decision. Generally trial judges do the parties and their lawyers a favor when they limit closing arguments, because after a long trial the jurors' attention is somewhat limited and normally a shorter closing is more effective.

*Id.* at 729.

■ Here, following the close of evidence, the trial court informed counsel that each attorney would be limited to 45 minutes for their closing arguments. Reproduced Record (R.R.) at 1729a. At that time, Plaintiffs' counsel inquired as to how much time he would have for rebuttal. The court replied, "None. All right." R.R. at 1730a. The trial court also declined Plaintiffs' counsel's request to reserve rebuttal time from his main argument. *Id.* Plaintiffs' counsel neither objected to this denial nor produced authority to compel a contrary result. R.R. at 1729a–30a.

In denying Plaintiffs' request to present rebuttal to Kawasaki's closing argument, the trial court clearly acted within its authority to regulate the length and number of addresses to the jury. *See* Pa. R.C.P. Nos. 223(3), 225. Because the trial court permitted counsel for both parties a single opportunity to present closing arguments of equal lengths, we discern no abuse of discretion. *See D'Orazio.*

■ Nevertheless, relying on Rule 225 of the Lehigh County Rules of Civil Procedure, Plaintiffs maintain, as the party that bore the burden of proof, they had an absolute right to rebuttal. Lehigh County Local Rule 225 states, in its entirety:

> Except as otherwise directed by the trial judge, one attorney for each party or group of parties having the burden of proof shall address the jury at the conclusion of the evidence, after which the attorney for each adverse party or group of parties shall sum up. One attorney for each party or group of parties having the burden of proof shall then be allowed to address the jury in rebuttal.

Leh.R.C.P. 225.

■ "[T]he application, construction, and interpretation of a local rule of court are matters primarily to be determined by the court promulgating the local rule, and an appellate court will only interfere where the court commits an abuse of discretion." *Weinhold v. Brecknock Twp. Zoning Hearing Bd.,* 160 Pa.Cmwlth. 462, 635 A.2d 244, 245–46 (1993). An abuse of discretion exists when the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious, fails to apply the law or is motivated by partiality, prejudice, bias or ill will. *Harman ex rel. Harman.*

Rejecting Plaintiffs' assertion that Leh. R.C.P. 225 grants Plaintiffs an absolute right to rebuttal, the trial court stated:

> While the last sentence of [the Rule] states that a party having the burden of proof shall be allowed to address the jury in rebuttal, *the Rule commences with the unambiguous statement "[e]xcept as otherwise directed by the trial judge."* Plaintiffs are absolutely entitled to have counsel present a closing argument and they were afforded that right.

Tr. Ct. Slip Op. at 6 (emphasis added). We discern no abuse of discretion from the trial court's interpretation of its local rule. More specifically, like the discretion afforded the trial court under Pa. R.C.P. No. 223(3), the first sentence of Leh.R.C.P. 225 grants the trial court discretion to regulate

addresses to the jury. Thus, the trial court properly interpreted Leh.R.C.P. 225 in a manner consistent with Pa. R.C.P. No. 223(3).

## V. Reprimand

Plaintiffs next assert the cumulative effect of the trial court's demeaning statements to Plaintiffs' counsel and medical expert created a prejudicial atmosphere that tainted the jury's ability to reach a just verdict. Although Plaintiffs cite several instances of alleged improper conduct, they highlight two in particular: the trial court's reprimand of Plaintiffs' counsel in the presence of the jury and the reprimand of Plaintiffs' medical expert outside the presence of the jury.

■■■■ In all civil litigation, the trial judge possesses broad power and discretion to control the course of the trial. *See* 1 *Standard Pennsylvania Practice 2d* § 48:1 (1999 ed.). While every litigant is "entitled to a fair and impartial trial, . . . that does not mean that a trial [j]udge must be 'a mere moderator.'" *Keating v. Belcher*, 384 Pa. 129, 132, 119 A.2d 535, 537 (1956). "It is axiomatic that the conduct of a trial is the province of the judge. [Her] discretion, exercised without abuse, must control." *DeFulvio v. Holst*, 239 Pa.Super. 66, 362 A.2d 1098, 1099 (1976). *See also Leasure v. Heller*, 436 Pa. 108, 258 A.2d 855 (1969) (trial court is allowed wide discretion to exercise control over conduct of counsel, provided court does not abuse or arbitrarily exercise its discretion).

■■ A remark by a trial judge only warrants a new trial "when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived [a party] of a fair and impartial trial." *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973). Cases where a new trial was granted

based on a trial court's prejudicial remarks involved situations where the trial court: examined witnesses in an aggressive and partisan manner, *Commonwealth v. Williams*, 468 Pa. 453, 364 A.2d 281 (1976), expressed an opinion concerning the merits of the case, *Commonwealth v. Motley*, 448 Pa. 110, 289 A.2d 724 (1972), or expressed doubt regarding the credibility of various witnesses. *Commonwealth v. Butler*, 448 Pa. 128, 291 A.2d 89 (1972).

### A. Reprimand of Plaintiffs' Counsel

■■ As to the reprimand of Plaintiffs' counsel, this reprimand occurred during Plaintiffs' counsel's re-cross-examination of Dr. Robert Banks, a defense medical expert. During Plaintiffs' counsel's cross-examination of Dr. Banks, the trial court sustained more than 20 objections to questions by Plaintiffs' counsel. *See* R.R. at 1326a, 1330a, 1334a, 1339a, 1364a, 1376a, 1384a, 1407a, 1408a, 1410a, 1411a (two), 1417a (two), 1420a (two), 1422a, 1433a, 1434a, 1435a, 1445a, 1446(two). In addition, during the course of the cross-examination, the trial court repeatedly warned Plaintiffs' counsel not to testify for the witness, not to make speeches to the jury, and not to employ facts that were not in evidence. *See* R.R. at 1320a–21a, 1339a, 1371a, 1376a–77a, 1407a–08a, 1417a, 1434a, 1446a. Nevertheless, at the outset of his re-cross-examination of Dr. Banks, Plaintiffs' counsel inquired:

Did you see any tests, such as you did, with level three dummies that did not approximate Mr. Daddona—with an impact that did not approximate Mr. Daddona—with an impact that did not approximate a grate on the ground, with an impact that doesn't have a shovel scraping against the ground, with an impact that was limited to 3.8 miles per hour, with an impact that utilized a dummy with an open door, a dummy with a

partially opened door, a dummy pushed over to the window? Did you see any tests like that at all?

R.R. at 1458a. After the trial court sustained Kawasaki's counsel's objection, the following exchange occurred:

MR. KAROLY [Plaintiff's Counsel]: Sir, the last part that was read to you in the deposition of Mr. Daddona, wasn't that Mr. Daddona's deposition years later when they asked him for his interpretation of what he thinks might have happened with the—

THE COURT: The objection is sustained.

MR. GRAVER [Kawasaki's Counsel]: Your Honor, I object, and I ask that that be stricken from the record. I ask that counsel be reprimanded from continually, throughout this trial, giving speeches to witnesses and attempting to suggest to this jury information which is not in the record.

MR. KAROLY: Your Honor, that information is in the record and—

THE COURT: Mr. Karoly, Mr. Karoly, give your answer. Go ahead. We'll do all of this in front of the jury.

MR. KAROLY: Your Honor, I apologize, but counsel—

THE COURT: Don't apologize. I said give your answer.

MR. KAROLY: Counsel did the same thing before, Your Honor. Mr. Daddona's statement in terms of what happened was he did not recall—

THE COURT: You're giving a speech, Mr. Karoly. You're not giving a legal response to the objection of counsel.

MR. KAROLY: Counsel is using a part of the deposition that—

THE COURT: Yes, he is. Yes, he is using a part of the deposition, Mr. Karoly.

MR. KAROLY: That—

THE COURT: All right. And what else? Using the part of the deposition is—would be a legal answer here. And what else has—

MR. KAROLY: Leaving the impression with the jury and this witness that that was Mr. Daddona's explanation of how he recalls the accident happened as opposed to another counsel questioning him on reconstruction after the fact.

THE COURT: All right. Well, Mr. Karoly, now we'll hear from Mr. Graver.

MR. GRAVER: Your Honor, all I read was Mr. Dadonna's sworn testimony in a response to questions from counsel.

THE COURT: That's right, and, Mr. Karoly, if you don't like what deposition testimony was read by counsel—

MR. KAROLY: If I may have just one minute, Your Honor?

THE COURT: No, I was talking and you stopped listening to me. I'm going to talk to you now. If you don't like what counsel has read in a deposition, the recourse is well known to you, the recourse is that you may read other parts of the deposition that you feel counsel may have left out.

What you cannot do is give speeches to the jury about what other depositions were given, what else was said, what your interpretation of it is.

And, yes, Mr. Karoly, regrettably, I must reprimand you in front of the jury. I think we have a very intelligent jury here. I hope they understand the difference between your testimony and the—a proper question. But the law requires me to make sure they understand it. I've told you many times today you may not do that, and you insist on continuing to do it.

You ask questions in front of the jury or make suggestions that are improper. They are unfair to the defense. They

are delaying this trial considerably. And if a jury isn't alert, it may mislead the jury, and I must caution the jury that they must be very, very careful to ignore preambles to questions and just listen to proper questions that are asked. All right, Mr. Karoly.

R.R. at 1458a–1461a.

We discern no abuse of discretion from the trial court's admonishment. To the contrary, we believe the trial court appropriately responded to Plaintiffs' counsel's decision to ignore repeated warnings. *See Robert v. Chodoff*, 259 Pa.Super. 332, 393 A.2d 853 (1978) (trial court acted appropriately in admonishing counsel after counsel repeatedly disregarded trial court's prior ruling). Clearly, Plaintiffs' counsel's persistent refusal to adhere to the trial court's prior rulings required a more direct effort at control by the trial court.

Moreover, after the close of the evidence, the trial court provided the following cautionary instruction to the jury:

> You should not render your verdict based on the attorneys. I know that there was a suggestion by one attorney that he might have offended the Judge, and that's not exactly accurate.
>
> I do try to run a very tight courtroom, and I think, as you know, I am not passing judgment upon the stewardship or ability or the person of any attorney in the courtroom. The attorneys are not the case. The attorneys are the facilitator for the evidence that came into the case from the stand. . . . .

R.R. at 1881a. In light of this cautionary instruction and Plaintiff's failure to specifically assert prejudice resulting from the trial court's admonishment of their counsel, we discern no abuse of discretion.

### B. Reprimand of Plaintiffs' Medical Expert

■ Plaintiffs also take issue with the trial court's reprimand of their medical expert, Dr. John Shane, a pathologist, despite the fact this reprimand occurred outside the presence of the jury. During his direct examination of Dr. Shane, Plaintiffs' counsel repeatedly asked questions designed to elicit testimony concerning principles of physics related to seatbelt usage.[4] *See* R.R. at 808a–15a. The trial court sustained a beyond-the-scope objection when Plaintiffs' counsel asked Dr. Shane if Daddona would have sustained injuries if the front-end loader was equipped with a three-point seatbelt. R.R. at 808a–09a. The trial court sustained another beyond-the-scope objection when Plaintiffs' counsel asked Dr. Shane's opinion about Daddona's use of a lap belt. R.R. at 809a. Plaintiffs' counsel then asked Dr. Shane what factual information he received surrounding this incident that led to the belief that Daddona was wearing his seatbelt. R.R. at 810a. After Kawasaki's counsel objected, the trial court stated:

> THE COURT: Mr. Karoly, let me explain what the Doctor can testify to in that regard. He cannot testify to this jury that he based his opinion that Mr. Daddona was wearing a seatbelt based on anybody's testimony because then he would be vouching for the credibility of witnesses; and, . . . only the jury can be the ones to decide credibility.

R.R. at 810a–11a. Following the trial court's statement, Dr. Shane himself attempted to introduce testimony concerning the effect of seatbelt usage on passenger movement. R.R. at 811a–12a. Specifically, the following exchange occurred:

> MR. KAROLY: Doctor, if you'd refer to your report, please, could you tell us

---

**4.** Seat belt usage was an issue because Plaintiffs claimed Daddona struck his head while

properly seated and restrained. *See* Tr. Ct. Slip Op. at 10, n. 11.

what your findings were with regard to your medical investigation?

[DR. SHANE]: Mr. Daddona had two injuries. He had the injuries exterior of his body, here, and one back here.

That tells me that he went forward and backward. The backward movement, occipital injury, is due to and best explained by restraint. The wearing of the seatbelt, clothing, particularly heavy clothing, are all factorable. If you are not wearing a seatbelt, you are much more likely to go forward but not backward.

MR. GRAVER: Your Honor, I have to object again. I'm sorry to interrupt, but this is way beyond the scope.

THE COURT: It's not in his report, Mr. Karoly.

MR. KAROLY: Your Honor, it—

THE COURT: Mr. Karoly, no argument. Tell me where in the report that is, and I will change my ruling.

MR. KAROLY: Your Honor, he explains the—

THE COURT: No, not he explains. Tell me—point to me, in the report, please, Mr. Karoly.

MR. KAROLY: Page 3, Your Honor, the second full paragraph, explaining the—

THE COURT: Let me read it, please. I don't see the word seatbelt in there. Am I missing something?

MR. KAROLY: Then it's the first paragraph, if that's what you're looking for, Your Honor.

THE COURT: The first paragraph of page 3?

MR. KAROLY: Page 2, I'm sorry.

THE COURT: Oh, as an assumption, yes.

MR. KAROLY: Pardon me?

THE COURT: As an assumption, yes, not as a conclusion.

MR. KAROLY: Doctor, I want you to assume for the moment that Mr. Daddona was seat belted and I want you further to relate that, if you can, to the injuries he sustained.

Do you have an opinion as to whether or not the injuries he sustained are consistent with a person who was seat belted in this Kawasaki vehicle on January 12th, 1996?

MR. GRAVER: Objection.

THE COURT: No, no, Mr. Karoly. The objection is sustained. This witness cannot tell this jury whether he believes Mr. Daddona was seat belted or not. He may talk about the injuries; and in that injury, he may assume, as all experts are allowed to assume, certain hypotheticals, and he may assume that he was wearing the seat belt. But he cannot relate these injuries to the use of the seatbelt because his report doesn't do that.

MR. KAROLY: Did Mr. Daddona have any evidence at all of any injuries that would indicate he was not wearing a seat belt?

MR. GRAVER: Objection.

THE COURT: The objection is sustained.

* * * *

MR. KAROLY: Do you have an opinion as to the mechanism by which Mr. Daddona sustained the injuries which you examined by way of the medical records, the diagnostic tests, and the photographs and other information you received?

DR. SHANE: Yes.

MR. KAROLY: And what is your opinion as to that mechanism?

MR. GRAVER: Objection, Your Honor.

THE COURT: The objection is overruled as long as the Doctor understands the limits of what he can talk about.

DR. SHANE: His mechanism of injury was forward inertia, some rotational effect, impact of his left lateral frontal[/]partially temporal skull, rotational injury with contrecoup hemorrhagic contusion, i.e., a coup, and the rotational effects which caused his concussion. *The injury to the back of his head presumes wearing a seat belt.*

THE COURT: The objection is sustained. That last sentence is stricken. The jury will be excused for five minutes. This won't be our morning recess.

* * * *

(Whereupon, the jury leaves the courtroom.)

* * * *

THE COURT: Dr. Shane, ordinarily, I would hold an attorney responsible for what just happened here, and I will hold Mr. Karoly responsible for what he's responsible for. But I've known you a long time.

You've been in every court in this building and every courtroom in this state. You've testified more times, I think, than trials that I've conducted in 18 years. You know the rules of evidence. You are an intelligent man who understood exactly what was going on here.

You knew you were not permitted to offer testimony about any causation with regard to the seat belt, and you went ahead and did it anyway. And I believe that not only I and counsel deserve an apology, but I believe the jury deserves an apology because your disregard was not only contemptuous of me, but it was contemptuous of them.

R.R. at 811a–16a (emphasis added).

As with the reprimand of Plaintiffs' counsel, we discern no abuse of discretion from the trial court's admonishment of this witness for several reasons. First and foremost, because this reprimand occurred *outside the presence of the jury,* it is unclear how it prejudiced Plaintiffs. Plaintiffs generally assert the trial court's reprimand had "an obvious chilling effect" on Dr. Shane's' testimony and hindered the jury's ability to assess his credibility, but they do not explain how an unperceived incident caused harm. For this reason, the bald claim of prejudice is unpersuasive.

Further, because the excluded testimony concerned an opinion not disclosed in Dr. Shane's pre-trial report, it was inadmissible. As a result, the trial court properly excluded this testimony. *See* Pa. R.C.P. No. 4003.5(c) ("direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his ... report...."); *Brodowski v. Ryave,* 885 A.2d 1045 (Pa.Super.2005) (trial court properly precludes expert testimony on an issue where opinions would be beyond the fair scope of expert report).

Finally, we believe the trial court's admonishment was appropriate based on Dr. Shane's failure to adhere to the trial court's repeated rulings. *See Chodoff* (in discharge of duty to conduct trial in orderly manner, trial judge may admonish witness who seeks to inject irrelevant and prejudicial matter into case).

## C. Other Alleged Improper Conduct

■ Plaintiffs also contend the trial court acted improperly in several other instances, including: interrupting Plaintiffs' counsel during his opening statement; overruling Plaintiffs' counsel's objections without hearing the basis; sustaining Ka-

wasaki's counsel's objections without affording Plaintiffs' counsel an opportunity to respond; and, making demeaning statements to Plaintiffs' counsel concerning his use of the courtroom lectern. However, Plaintiffs did not raise these issues in their brief in support of post-trial motions. By failing to do so, Plaintiffs deprived the trial court an opportunity to address the merits of these issues. As such, the issues are waived. *See Browne v. Commonwealth*, 843 A.2d 429 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 581 Pa. 681, 863 A.2d 1149 (2004) (failure to argue issues in brief in support of post-trial motions results in waiver); *Capital Care Corp. v. Hunt*, 847 A.2d 75 (Pa.Super.2004) (same); *Jackson* (same).

## VI. Testimony of Kawasaki's Experts

Plaintiffs next argue the trial court erred in permitting Kawasaki's experts, Mr. William Otto, an engineering expert, and Dr. Robert Banks, an expert in biomechanics, to testify beyond the scope of their pre-trial expert reports.

▮▮▮▮▮▮ A trial court is vested with wide discretion in deciding whether to allow the admission of expert testimony into evidence, and is not subject to reversal absent a clear abuse of discretion. *Allegheny Ludlum Corp. v. Mun. Auth. of Westmoreland County*, 659 A.2d 20 (Pa. Cmwlth.1995). Only when the admission of the testimony is harmful or prejudicial to the party complaining will reversible error exist. *Id.*

Discovery of information concerning expert testimony is governed by Pa. R.C.P. No. 4003.5. That Rule states, in relevant part:

> [T]he direct testimony of the expert at the trial may not be inconsistent with or go beyond the fair scope of his or her testimony in the discovery proceedings as set forth in the deposition, answer to an interrogatory, separate report, or supplement thereto. However, the expert shall not be prevented from testifying as to facts or opinions on matters on which the expert has not been interrogated in the discovery proceedings.

Pa. R.C.P. No. 4003.5(c). The explanatory comment to Rule 4003.5(c) explains the Rule is intended to "prevent the submission of incomplete or 'fudging' of reports which would fail to reveal fully the facts and opinions of the expert or his grounds therefor[e]. . . ." Pa. R.C.P. No. 4003.5(c), Explanatory Comment—1978.

▮▮▮▮▮ The primary purpose of the Rule is to avoid unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony. *United States Mineral Prods. Co.* The question of whether the permissible limits of testimony under the Rule were violated is determined on a case by case basis, and the essence of the inquiry is fairness. *Id.* The question is whether the discrepancy between the expert's pre-trial report and his trial testimony is of a nature that would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response. *Id.* The opposing party must suffer prejudice as a result of the testimony going beyond the fair scope of the expert's report before admission of the testimony is considered reversible error. *Id.*

▮▮▮▮▮ Thus, in determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, a trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. *Feden v. Consol. Rail Corp.*, 746 A.2d 1158 (Pa.Super.2000). Under this analysis, an expert's trial testimony may be found unobjectiona-

ble whenever it could reasonably have been anticipated from the content of the expert's pre-trial report. *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 604 A.2d 270 (1992). An expert's trial testimony that constitutes a reasonable explanation or even an enlargement of the expert's written words may be deemed to fall within the coverage of "fair scope." *Hickman v. Fruehauf Corp.*, 386 Pa.Super. 455, 563 A.2d 155 (1989); *Wilkes–Barre Iron v. Pargas of Wilkes–Barre*, 348 Pa.Super. 285, 502 A.2d 210 (1985).

■ Moreover, where a plaintiff introduces certain evidence in his case-in-chief, he cannot later deprive his opposition of the privilege of denying it. *See Leaphart v. Whiting Corp.*, 387 Pa.Super. 253, 564 A.2d 165 (1989). Thus, an expert's opinion offered in response to other testimony presented at trial need not be addressed in the expert's report. *Allegheny Ludlum; Earlin v. Cravetz*, 264 Pa.Super. 294, 399 A.2d 783 (1979).

### A. Otto

As to Otto, Plaintiffs cite two instances in which the trial court improperly permitted Otto to testify beyond the scope of his pre-trial report. They first assert the trial court improperly permitted Otto to testify that a three-point seat belt is not practicable for a front-end loader because the vehicle is used in a construction site environment. In addition, they contend the trial court improperly permitted Otto to testify to his observations concerning the metal drainage grate Daddona struck. Contrary to Plaintiffs' assertions, no abuse of discretion is apparent in the admission of this testimony.

### 1.

Plaintiffs first assert the trial court erred in permitting Otto to testify that a three-point seat belt is impractical for a front-end loader because the loader is used in a construction site environment. They contend this opinion was beyond the fair scope of Otto's pre-trial report. To the contrary, Otto's pre-trial report, which was prepared approximately 18 months prior to trial, states (with emphasis added):

I reviewed the findings presented by [Plaintiffs' experts], and offer the following analysis of those findings:

* * * *

3. "Kawasaki's failure to provide a shoulder belt was an improper, unsafe, dangerous action, resulting in an unreasonably dangerous product."

The loader is not a consumer product. Rather, it is designed for use on rough terrain and in applications involving repeated forward/reverse movements. *Because of the loader's anticipated use environment,* the seat of the loader is articulated with a vertical suspension system to protect the spine, liver, back, neck and kidney of the operator. Because of this articulation and the rough terrain environment, a shoulder harness would continually cut into the operator's shoulder, and may well encourage nonuse of the restraint system. Additionally, because the loader is primarily used in a repeated forward and reverse motion, a shoulder harness would create an impediment to the operator's ability to turn and look over his shoulder when reversing the machine. It is not surprising, therefore[,] that of the over 60 various models of construction machinery that we have surveyed, none of these machines incorporate a three-point seat belt.

R.R. at 1927a. The report further states, "[t]he cab [of the loader] was not defective for lack of a three point restraint system and[,] in fact, the inclusion of such [a] device[] on this loader would, in certain

respects, compromise its utility and safety." R.R. at 1929a.

■ At trial, Otto opined the dust and dirt of a construction site, i.e., the "anticipated use environment" for the loader, would render use of a three-point seat belt such as an inertia reel seat belt impractical.[5] *See* R.R. at 1622a–25a. Clearly, this trial testimony was within the fair scope of Otto's pre-trial report and did not cause unfair surprise to Plaintiffs. Moreover, Otto's testimony concerning the impracticality of the three-point seat belt was offered in direct response to the testimony of Plaintiffs' design expert, who opined the lack of a three-point seat belt rendered the loader defective. R.R. at 498a–505a. The trial court did not abuse its discretion by permitting a defense expert to respond to points previously raised by a plaintiff's expert. *See Allegheny Ludlum; Earlin.*

■ Plaintiffs further claim Otto impermissibly introduced evidence of "industry standards" by opining *no* front-end loaders are equipped with three-point seat belts. Again, we disagree.

■ Admission of industry standards in a strict liability case constitutes reversible error. *See Lewis.* However, where a plaintiff introduces evidence of industry standards in his case-in-chief, the defense is entitled to present evidence in opposition. *Leaphart.*

Here, Otto's testimony that no front-end loaders are currently equipped with three-point seat belts was offered in opposition to a suggestion by Plaintiffs' design expert that the opposite is true. *See* R.R. at 505a ("[t]his is a proven design. Seat belts, the shoulder harness has been with us for decades . . . ."). Because Otto's testimony

was offered in opposition to evidence presented by Plaintiffs' expert, we discern *no* abuse of discretion from the trial court's decision to admit this testimony. *Leaphart.*

2.

■ Plaintiffs also maintain the trial court permitted Otto to testify beyond the scope of his pre-trial report by permitting him to testify to his observations regarding the metal drainage grate. Rejecting this assertion, the trial court stated:

Plaintiffs . . . argue that Mr. Otto should not have been permitted to testify regarding attempts to match a notch in the grate that was struck with a bolt taken from the plow blade in order to hypothesize the direction and angle of the loader at the time of the impact. Mr. Otto testified that when he inspected the scene where the accident occurred that he photographed an area where he observed a damaged storm grate. Without objection from [P]laintiffs' counsel, the photograph of a close up of an indentation in the grate and the grate frame was admitted into evidence. [Kawasaki's] counsel then asked Mr. Otto to describe what he observed during a close inspection of the grate and the indentation.

Plaintiff's counsel objected on the ground that there was nothing in the expert report about examination of a grate. The objection was overruled because Item 2 in the report said he examined photographs of the drainage grate.

Because Mr. Otto's testimony regarding the drainage grate was based upon a photograph of the grate that Mr. Otto had taken and that had been referenced

5. Otto explained inertia reel seatbelts "are what you have in your automobile. Inertia reels are belts that can be spooled out from a spring-loaded roller. The belt is wound up on a little roller that's spring-loaded to provide tension on the belt, small tension, not impeding tension." R.R. at 1621a.

in his report, produced to the [P]laintiffs and moved into evidence without objection his testimony in that regard was properly admitted.

Tr. Ct., Slip Op. at 16 (footnotes omitted). We concur with the trial court's analysis. No prejudice is apparent from Otto's testimony describing a photograph attached to his report. *See* R.R. at 1923a. In addition, Otto's testimony was consistent with comments made in a report by an expert retained by Plaintiffs. R.R. at 1962a–66a. Clearly, Plaintiffs were not unfairly surprised by Otto's testimony.

In sum, Otto's direct testimony at trial was neither inconsistent with nor beyond the fair scope of his pre-trial report. Also, this testimony did not prejudice Plaintiffs by preventing them from preparing a meaningful response or misleading them as to the nature of the response. Therefore, Plaintiffs' arguments fail.

### B. Dr. Banks

Plaintiffs also maintain Dr. Banks' testimony exceeded the fair scope of his pre-trial report in three instances: he opined Daddona did not suffer a "diffuse axonal injury"; he rendered opinions concerning the results of several diagnostic tests performed on Daddona; and, he opined there was insufficient head rotation to cause the alleged head injuries.

### 1.

◼ Plaintiffs assert the trial court permitted Dr. Banks to testify beyond the scope of his pre-trial report when he opined Daddona did not suffer a diffuse axonal injury. They point to the fact that, on cross-examination, Dr. Banks conceded the words "diffuse axonal injury" are not expressly mentioned in his pre-trial report. *See* R.R. at 1309a.

At trial, Plaintiffs' counsel objected when Kawasaki's counsel asked Dr. Banks,

"based upon the discussion you just gave of diffuse axonal injury, is a tiny focus of hemorrhagic contusion consistent or inconsistent with a diffuse axonal injury?" R.R. at 1298a. On the issue of Daddona's injuries, Dr. Banks' pre-trial report, which was prepared approximately 18 months prior to trial, states:

The left frontal laceration occurred when Mr. Daddona's head directly contacted the forward window frame edge during the impact. While the laceration resulted from direct contact with the window edge, it is indeterminate whether the hard hat was worn prior to impact. *The tiny focus of hemorrhagic contusion in the right frontal lobe is not characteristic of a contrecoup injury. It may relate to a pre-existing condition or an unrelated fall/event. However, based on the available evidence and results of testing, his injury was not a result of an accident scenario as described by Mr. Daddona and [P]laintiffs' experts.*

R.R. at 1919a (emphasis added). After reviewing Dr. Banks' report, the trial court was satisfied it discussed the nature of Dadonna's head injuries so that opposing parties were on notice of his opinions. *See* R.R. at 1918a–19a. Based on our independent review, we do not believe any discrepancy between Dr. Banks' report and trial testimony prevented Plaintiffs from preparing a meaningful response or misled Plaintiffs as to the nature of the appropriate response.

Additionally, as noted by the trial court, "Dr. Banks' testimony directly addressed, in the nature of rebuttal, allegations made by [P]laintiffs' expert [Dr. Shane]. This . . . allowed Dr. Banks to testify that the small hemorrhagic contusion that appeared was inconsistent with diffuse axonal injury." Tr. Ct., Slip Op. at 17 (footnote omitted). *See Allegheny Ludlum; Earlin.*

Contrary to Plaintiffs' assertions, the mere fact that the words "diffuse axonal injury" do not appear in Dr. Banks' pre-trial report does not automatically require exclusion of this testimony. *Hickman; Wilkes–Barre Iron.*

**2.**

■ Plaintiffs further maintain Dr. Banks testified beyond the fair scope of his report when he testified to his interpretations of various diagnostic tests despite the fact such interpretations were not mentioned in his pre-trial report. Contrary to this assertion, however, Dr. Banks' pre-trial report clearly indicates he reviewed Daddona's medical records in reaching his opinions. R.R. at 1916a. In fact, Dr. Banks' report indicates, in rendering his opinions, he reviewed Daddona's medical records from Lehigh Valley Hospital and Lehigh Magnetic Imaging Center, where the diagnostic tests were performed. *Id.* Therefore, reference to the diagnostic tests was not beyond the scope of Dr. Banks' pre-trial report.

**3.**

■ Finally, Plaintiffs contend the trial court erred in permitting Dr. Banks to opine there was insufficient head rotation to cause the injuries claimed because he did not mention this opinion in his pre-trial report.

Dr. Banks' pre-trial report included a section on "Vehicle Dynamics and Occupant Kinematics Tests." R.R. at 1917a. In this section, Dr. Banks described the crash testing he conducted to determine how the accident and the injury occurred, explaining "[t]o fully understand the collision dynamics and occupant kinematics of this incident, a series of ten impact tests of the subject loader was conducted." *Id.* Clearly, Dr. Banks' pre-trial report disclosed the results of tests and his opinion

of how the accident occurred and how the head injury occurred. As a result, Dr. Banks' pre-trial report sufficiently placed Plaintiffs on notice of his opinion regarding the mechanism of head injury.

Further, as evidenced by Dr. Shane's proffered testimony previously referenced, Plaintiffs were prepared to present evidence on head rotation. Thus, the word selection in Dr. Banks' pre-trial report did not prejudice Plaintiffs by preventing them from preparing a meaningful response. Therefore, Plaintiffs' arguments fail.

**VII. Denial of Motion for Mistrial**

Plaintiffs next assert the trial court erred in denying their motion for a mistrial after Kawasaki's counsel repeatedly referenced concepts of negligence in his opening statement. They argue reference to such negligence-related concepts is impermissible in a strict liability case.

■ The decision to grant or deny a motion for mistrial rests primarily in the discretion of the trial court. *Clark v. Hoerner,* 362 Pa.Super. 588, 525 A.2d 377 (1987). Absent a clear abuse of that discretion, an appellate court will not disturb the trial court's ruling. *Id.* The issue of whether a court abused its discretion in denying a motion for mistrial must be determined by the circumstances under which the alleged improper statements were made and the precautions taken to prevent the prejudicial effect of those statements on the jury. *Id.*

■ A trial judge enjoys broad powers and discretion in the handling of alleged prejudicial remarks made during argument and the trial court's charge to the jury may serve to counter any prejudice that may arise from counsel's remarks. *Beckner v. Copeland Corp.,* 785 A.2d 1003 (Pa.Super.2001). A trial court's actions in response to prejudicial remarks

will not be disturbed on appeal unless there is an obvious abuse of discretion. *Id.*

■■■■■ While remarks by counsel may constitute grounds for a mistrial, such remarks must be beyond correction by any admonition which the court may give the jury. *Tedesco v. Mun. Auth. of Hazle Twp.,* 799 A.2d 931 (Pa.Cmwlth.2002); 7 *Standard Pennsylvania Practice 2d* § 38:50. In deciding whether the remarks are beyond correction, we must look at the totality of the circumstances and whether the offending statements were cut short by opposing counsel before serious damage was caused. *Tedesco.*

Plaintiffs contend Kawasaki's counsel made improper references to negligence-related concepts by: asserting Daddona should have used a different attachment on the loader; arguing Daddona was contributorily negligent for not using a "ground guide"; maintaining Daddona had the bucket of the loader in the wrong position; asserting Daddona's head was extended outside an open window; referencing other defendants sued in this action; maintaining the injuries were caused by the negligence of other parties; and, introducing evidence of "industry standards."

■■■■ Although Plaintiffs now assert Kawasaki's counsel made eight improper references to negligence-related concepts, in their motion for mistrial to the trial court Plaintiffs only identified four such references. Specifically, they argued Kawasaki's counsel improperly referenced: Daddona's negligence for not retaining a spotter; Daddona's negligence in not using the proper attachment on the loader; alle-

gations in the complaint relating to Plaintiffs' claims against other defendants that were no longer relevant; and, industry standards regarding the design of a seatbelt. R.R. at 336a–37a. The additional items of which Plaintiffs now complain were not offered to the trial court as support for the motion for mistrial. They are, therefore, not appropriate for appellate review. *Harman ex. rel. Harman,* 562 Pa. at 471, 756 A.2d at 1124 ("[i]t is axiomatic that, in order to preserve an issue for review, litigants must make timely and specific objections during trial...."); *Middletown Twp., Delaware County Sewer Auth. v. Baker,* 105 Pa.Cmwlth. 1, 522 A.2d 1182 (1987) (if no objection is made at trial, error that could be corrected may not constitute a basis for post-trial relief).

■■■ As to the issues properly preserved, we discern no abuse of discretion from the trial court's decision to deny Plaintiffs' motion for mistrial. Plaintiffs correctly point out that evidence of negligence-related concepts is irrelevant and inadmissible in the area of strict products liability. *Spino v. John S. Tilley Ladder Co.,* 548 Pa. 286, 292–93, 696 A.2d 1169, 1172 (1997). However, not every mention of a negligence-related concept poisons a strict liability claim. *Id.* Indeed, "evidence which is inadmissible for one purpose may be admissible for another." *Id.* at 292, 696 A.2d at 1172.[6]

■■■ Here, as to Kawasaki's counsel's statement concerning the failure to provide and maintain a spotter, this statement addressed the alleged negligence of Kawasaki's co-defendant, Trexler Plaza. Fail-

---

**6.** In *Spino,* our Supreme Court held evidence regarding the lack of prior claims against a manufacturer could be admitted in a design defect products liability action if it is relevant to a contested issue of causation. *See also Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 337 A.2d 893 (1975) (evidence admissible in negligence case to prove "abnormal use" is admissible in a strict liability case only for the purpose of rebutting plaintiff's contentions of defect and proximate cause).

ure to provide and maintain a spotter related to Kawasaki's cross-claims against Trexler Plaza. R.R. at 339a. Similarly, Kawasaki's counsel's references to the negligence of other defendants concerned the cross-claims it was pursuing against those defendants. R.R. at 345a–46a. These references did not relate to Plaintiffs' strict liability claim but rather to other issues ultimately submitted to the jury.

■ In addition, Kawasaki's counsel's reference to the bucket attachment Daddona used to remove the snow was not improper. The introduction of information regarding the attachment used on the loader concerned the "intended use" of the loader, R.R. at 344a–45a, which was directly related to Plaintiffs' design defect claim. *See, e.g., Hadar* (product is defective when it is not safely designed for its "intended use").

■ Finally, as to the issue of "industry standards," references to the design of other safety devices related to whether alternative designs proposed by Plaintiffs were practical and consistent with the loader's intended use. These references were not improper given that the practicability of an alternative, feasible design is an essential element in a crashworthiness case. *Barker.* Moreover, references to the design of other safety devices implicated the credibility of Plaintiffs' design expert, who opined three-point seat belts and ROPS padding were commonly available when the loader was manufactured. R.R. at 498a–99a.

■ More importantly, Plaintiffs' counsel objected to these items during Kawasaki's counsel's opening statement. The trial court ruled on the objections and, where appropriate, repeatedly reminded the jury the statements were not evidence. R.R. at 275a, 285a–86a, 329a. Because Plaintiffs did not request additional curative instructions during the opening statement, the trial court concluded its cautions were sufficient to dispel any prejudice. R.R. at 350a. Consequently, we discern no abuse of discretion.

## VIII. Exclusion of Lay Witness

■ Plaintiffs next argue the trial court abused its discretion by excluding the testimony of one of their first witnesses, Anthony Schimmel, an employee of Trexler Plaza. They assert Schimmel was the first person who responded to the accident, and his testimony was critical to explaining Daddona's condition after the accident and Daddona's claimed use of his seat belt during the accident.

At trial, Kawasaki objected to Plaintiffs' attempt to present Schimmel's testimony because Plaintiffs did not previously identify Schimmel as a witness. The trial court sustained this objection and excluded Schimmel's testimony on the grounds Plaintiffs failed to provide Kawasaki with any notice Schimmel was a witness with information about the accident. R.R. at 398a–99a. Plaintiffs assert, although they first identified Schimmel as a witness in their pre-trial memorandum, another party disclosed Schimmel's identity three years earlier.

■ The decision whether to admit or exclude the testimony of a witness is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Fraternal Order of Police, Lodge 5 v. City of Phila.,* 160 Pa.Cmwlth. 409, 635 A.2d 222 (1993). Here, the trial court did not abuse its discretion in excluding Schimmel's testimony because Plaintiffs did not provide Kawasaki with sufficient notice Schimmel was a witness with information about the accident.

■ Pennsylvania Rule of Civil Procedure No. 4019(i) states, in its entirety:

*A witness whose identity has not been revealed as provided in this chapter shall not be permitted to testify on behalf of the defaulting party at the trial of the action.* However, if the failure to disclose the identity of the witness is the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

Pa. R.C.P. No. 4019(i) (emphasis added).[7] The Rule serves as more than a procedural technicality; it provides a shield to prevent the unfair advantage of having a surprise witness testify. *Clark v. Hoerner*, 362 Pa.Super. 588, 525 A.2d 377 (1987); *Walker v. Pugliese*, 317 Pa.Super. 595, 464 A.2d 482 (1983).

Here, Plaintiffs did not identify Schimmel as a witness in response to Kawasaki's interrogatory requesting Plaintiffs:

Give the full names and addresses of the following persons:

(a) Those who witnessed the accident;

(b) Those who were in the immediate vicinity of the accident; and

(c) Those who have any information or knowledge concerning the facts, events, circumstances, conditions, and occurrences surrounding the happening of the accident.

R.R. at 388a. Nor did Plaintiffs identify Schimmel as a witness in response to an interrogatory from another party requesting the identification of all individuals having "any knowledge of any facts pertaining to the manner in which [Daddona] sustained [his] injury." R.R. at 387a.

■ Further, although Plaintiffs possessed a duty to seasonably supplement their responses to these discovery requests, Pa. R.C.P. No. 4007.4(1), Plaintiffs did not identify Schimmel as a witness or indicate the nature of his involvement at the accident scene. Thus, Plaintiffs did not provide Kawasaki with sufficient notice Schimmel had knowledge of the facts surrounding the accident, and it was unfairly surprised by Plaintiffs' decision to call him as a witness at trial. Notably, Plaintiffs do not assert their failure to disclose Schimmel's identity was the result of "extenuating circumstances beyond [their] control." Pa. R.C.P. No. 4019(i).[8] As a result, the trial court did not abuse its discretion in excluding Schimmel's testimony. *See id.*

Moreover, that Schimmel was identified in response to a request for production of documents by co-defendant Trexler Plaza does not alter our conclusion. The response merely listed Schimmel as one of 25 employees on the payroll for Trexler Plaza. It was insufficient to put Kawasaki on notice that Schimmel had any informa-

---

7. The 1978 Explanatory Note to Rule 4019(i) reiterates:

Subdivision (i) adds a new provision for sanctions for failure to identify witnesses as to whom discovery has been sought. A witness whose identity has not been revealed as provided by the Rules will not be permitted to testify at trial. If the failure to disclose his identity was the result of extenuating circumstances beyond the control of the defaulting party, the court may grant a continuance or other appropriate relief.

8. We may overlook a party's failure to properly disclose the identity of a witness where there was no bad faith, where there was substantial compliance with the rule's requirements, and where there was no prejudice or surprise. *See Feingold v. Se. Pa. Transp. Auth.*, 512 Pa. 567, 517 A.2d 1270 (1986). Here, however, Kawasaki was unfairly surprised by Plaintiffs' attempt to present Schimmel's testimony. In addition, Plaintiffs' failure to disclose Schimmel's identity prejudiced Kawasaki by interfering with its ability to determine whom to depose during discovery.

tion concerning the facts surrounding the accident.

Although Plaintiffs listed Schimmel as a witness in their pre-trial memorandum, this memorandum was filed only two weeks prior to trial, and disclosed the following: "23. Anthony Schimmel, fact witness." Certified Record (C.R.), Item # 362 at 5. This disclosure does not cure Plaintiffs' failure to provide information in response to discovery. The timing, failure to disclose address, and failure to disclose that this individual possessed information about the accident scene make this reference an *insufficient substitute for discovery.*

■ Additionally, Plaintiffs do not persuasively establish prejudice by virtue of the exclusion of this testimony. The condition of Daddona immediately after the accident relates to damages or to the presence of an enhanced injury, issues not reached by the jury. Similarly, the use of a seatbelt relates to whether any defect was a substantial factor or whether a proposed alternative design would have prevented an enhanced injury, issues not reached by the jury. Use of a seatbelt does not obviously relate to the one issue reached by the jury, whether a defect existed. Therefore, it is unclear how the exclusion of this testimony prejudiced Plaintiffs' case.

■ Nevertheless, Plaintiffs' argue, at the very least, the trial court should have permitted them to call Schimmel as a rebuttal witness. This argument lacks merit. The admission of rebuttal evidence is within the discretion of the trial judge. *Mishkin v. Redev. Auth. of City of Lancaster,* 6 Pa.Cmwlth. 97, 293 A.2d 135 (1972). "As a general rule a party cannot claim as a right to give as evidence in rebuttal that which he might have given in chief. . . ." *Id.* at 137 (quoting *Young v. Edwards,* 72 Pa. 257, 265 (1872)).

Here, the trial court determined, based on his offer of proof, Plaintiffs' counsel failed to establish Schimmel's testimony was proper rebuttal in this case. Because the proposed rebuttal testimony would not have differed from Schimmel's planned testimony in Plaintiffs' case-in-chief, R.R. at 1121a, the trial court properly declined to allow Schimmel as a rebuttal witness. *See Pittsburgh–Des Moines Steel Co., Inc. v. McLaughlin,* 77 Pa.Cmwlth. 565, 466 A.2d 1092 (1983) (trial court may properly exclude rebuttal if matter was something offering party could have presented during its case-in-chief).

## IX. Exclusion of Expert Rebuttal Testimony

Plaintiffs also contend the trial court abused its discretion in excluding the proposed rebuttal testimony of two of their physicians, Drs. Mark Osborne and Martin DiOrio. Plaintiffs assert they offered these witnesses to rebut Dr. Banks' "surprise" testimony as to his opinions concerning Daddona's diffuse axonal injury and his references to diagnostic tests. Plaintiffs argue their inability to present this rebuttal testimony resulted in prejudice because it left Dr. Banks' "surprise" opinions uncontradicted.

■ " 'Rebuttal evidence' is defined in Black's Law Dictionary (5th ed.1979) as '[e]vidence given to explain, repel, counteract, or disprove facts [as opposed to opinions] given in evidence by the adverse party.' " *Feingold v. Se. Pa. Transp. Authority.,* 339 Pa.Super. 15, 488 A.2d 284, 290 (1985), *aff'd,* 512 Pa. 567, 517 A.2d 1270 (1986). "A party cannot, as a matter of right, offer in rebuttal evidence which is properly part of his case in chief, but will be confined to matters requiring explanation and to answering new matter introduced by his opponent." *Clark,* 525 A.2d

at 382–83. Indeed, as explained by our Supreme Court:

> It is an elementary proposition that the plaintiff must prove during his case in chief all essential elements of his action as to which he has the burden of proof, and that he may not as a matter of right introduce evidence in rebuttal which is properly part of his case in chief. *The trial court has discretion in excluding as rebuttal evidence that which is properly part of the case in chief.*

*Downey v. Weston*, 451 Pa. 259, 268–69, 301 A.2d 635, 641 (emphasis added) (citations omitted). A trial court may properly exclude evidence offered on rebuttal if it is cumulative of evidence already presented. *Estate of Hannis v. Ashland State Gen. Hosp.*, 123 Pa.Cmwlth. 390, 554 A.2d 574 (1989). Repetitive testimony is improper rebuttal. *Kline v. Behrendt*, 396 Pa.Super. 302, 578 A.2d 526 (1990).

Here, the trial court excluded the testimony of Drs. Osborne and DiOrio because, among other things, Plaintiffs should have presented this testimony in their case-in-chief rather than on rebuttal. As explained more fully below, we discern no abuse of discretion from the trial court's exclusion of this testimony on that basis.

### A. Dr. Osborne

▉▉ In their case-in-chief, Plaintiffs presented the expert testimony of Dr. John Shane, a neuropathologist. Dr. Shane rendered opinions concerning the nature of Dadonna's injuries, including the alleged diffuse axonal injury, and explained the results of the diagnostic studies performed on Daddona. R.R. at 772a–77a, 803a–805a, 807a–808a, 815a, 827a–34a. Based on Plaintiffs' counsel's offer of proof to the trial court, Dr. Osborne's testimony would essentially reiterate Dr. Shane's

opinions on these issues. R.R. at 1767a–69a.

Because Plaintiffs should have presented testimony relating to the nature and extent of Daddona's injuries in their case-in-chief, the trial court did not abuse its discretion in excluding it as rebuttal testimony. Likewise, no abuse of discretion is evident in refusing repetitive testimony on rebuttal.

Moreover, as previously discussed, the opinions rendered by Kawasaki's medical expert, Dr. Banks, were within the fair scope of his pre-trial report and, therefore, he did not render any "surprise" opinions at trial. As a result, Plaintiffs claim that they needed to present rebuttal testimony to refute Dr. Banks' "surprise" opinions lacks merit.

### B. Dr. DiOrio

▉▉ As to Dr. DiOrio, although Plaintiffs now assert this witness would have contradicted the radiographic evidence and "head injury criteria" calculations presented by Dr. Banks, this offer of proof is significantly different from that made to the trial court. More specifically, when asked for an offer of proof concerning Dr. DiOrio's testimony, Plaintiffs' counsel responded "for the reasons previously given." R.R. at 1780a. Presumably, this referenced the following exchange:

THE COURT: Mr. Karoly, are you going to have any rebuttal witnesses?

\* \* \* \*

MR. KAROLY: Dr. Kimmel and Dr. DiOrio.

THE COURT: Dr. Kimmel will be testifying to what?

MR. KAROLY: *They will both be testifying to the degree of the brain damage, initially when they took over the brain damage care of [Daddona]. And that would be to rebut the propo-*

sition that somehow what we just heard from the EMT in an attempt to minimize the injuries, we would rebut that.

THE COURT: Well, why didn't you bring these people in your case-in-chief Mr. Karoly?

MR. KAROLY: Well, Your Honor, they probably were more properly rebuttal witnesses. *But, if you recall, based on our coming short on Friday and not having witnesses available, we rested the liability case.* But I do think they're more proper for rebuttal.

R.R. at 1171a, 1174a (emphasis added). As with Dr. Osborne, Plaintiffs should have presented Dr. DiOrio's testimony relating to the nature and extent of Daddona's injuries during their case-in-chief. Further, based on this exchange, it appears Plaintiffs intended to call Dr. DiOrio during their case-in-chief, but could not do so because he was unavailable. Dr. DiOrio's unavailability during Plaintiff's case-in-chief does not transform his testimony into proper rebuttal. Therefore, we discern no abuse of discretion from the trial court's exclusion of this alleged rebuttal testimony.

■ In addition, "if the basis of the request [for a new trial] is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining party. *Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment."* *Folger,* 876 A.2d at 1054 (emphasis added).

■ As previously discussed, the jury ended its deliberations after determining the front-end loader was not unsafe or defective for its intended use. As a result, a ruling excluding additional medical testimony concerning the nature and cause of Daddona's injuries did not affect the verdict. Therefore, this alleged error does not justify the grant of a new trial.[9]

## X. Denial of Motion for Non–Suit

■ As a final issue, Plaintiffs contend the trial court erred in denying the motions for non-suit filed by the defendants against whom Kawasaki filed its cross-claims. They assert, by virtue of its denial of the motions, the trial court allowed Kawasaki's counsel to introduce negligence concepts into a products liability trial. Plaintiffs maintain the introduction of these concepts confused the jury and prejudiced their case.

■ In responding to this assignment of error, the trial court stated Plaintiffs lacked standing to raise this issue because they did not raise such a motion or object to the trial court's ruling on the defendants' motion at trial. Contrary to the trial court's conclusion, however, Plaintiffs were aggrieved because they moved for compulsory non-suit against Kawasaki's cross-claims, and the trial court denied this motion. R.R. at 1744a–45a.

Although the other defendants were not actually present at trial, cross-claims against them remained for purposes of apportionment of liability. Because the jury never reached the issues of negligence of the other defendants, of causation

9. At oral argument, Plaintiffs' counsel asserted, despite the jury's finding of "no defect," the trial court's exclusion of the proffered medical evidence could have affected the verdict since such evidence would explain how the mechanism of injury related to the exis-

tence of a defect. This argument is not, however, presented in Plaintiffs' Brief to this Court. Therefore, it is waived. *See, e.g., Feldman v. Lafayette Green Condo. Ass'n,* 806 A.2d 497 (Pa.Cmwlth.2002) (failure to brief issue results in waiver).

and of apportionment of liability, it is not clear how Plaintiffs were prejudiced by the ruling of the compulsory nonsuit.

■ Entry of a non-suit is proper only if the fact-finder, viewing all the evidence in favor of the burdened party, could not reasonably conclude the essential elements of the cause of action were established. *Billig v. Skvarla*, 853 A.2d 1042 (Pa.Super.2004). A compulsory non-suit can only be granted in cases where it is clear a cause of action was not established. *Id.* The trial court must give the non-moving party the benefit of all favorable evidence along with all reasonable factual inferences arising from that evidence, resolving any conflict in the evidence in favor of the non-moving party. *Id.* A compulsory non-suit is valid only in a clear case where the facts and circumstances lead to only one conclusion-the absence of liability. *Harvilla v. Delcamp*, 521 Pa. 21, 555 A.2d 763 (1989). As stated by our Superior Court:

> [A] nonsuit can be entered only when it is inconceivable, on any reasonable hypothesis, that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to the [non-moving party], could determine in his favor the controlling issues involved.

*McMillan v. Mt. Laurel Racing, Inc.*, 240 Pa.Super. 248, 367 A.2d 1106, 1107–08 (1976).

■ The necessary elements to maintain an action in negligence are: a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal connection between the conduct and the resulting injury and actual loss or damage resulting to the interests of another.

*Morena v. S. Hills Health Sys.*, 501 Pa. 634, 462 A.2d 680 (1983). To grant a non-suit in a negligence case, the evidence must be so conclusive as to exclude the reasonable probability of inference otherwise. *Izzo v. Meyer*, 259 Pa.Super. 95, 393 A.2d 733 (1978).

Here, at trial, there was evidence that at the time of the accident the front-end loader Daddona operated struck a metal drainage inlet frame and grate protruding approximately two inches above the surface of the pavement. The negligent construction and maintenance of this area of pavement implicated several defendants. R.R. at 1507a–54a, 1592a–94a; Def.'s Ex. 186. Under these circumstances, we discern no error from the trial court's refusal to grant a compulsory non-suit on Kawasaki's cross-claims.

Based on the foregoing, we affirm.

### ORDER

AND NOW, this 31st day of January, 2006, the order of the Court of Common Pleas of Lehigh County is **AFFIRMED.**