**Norma M. PIA, Appellant,**

v.

**Robert PERROTTI, Indiv. and t/a V.P. Electrical Contracting, Inc. and V.P. Electrical Contracting, Inc., Appellee.**

Superior Court of Pennsylvania.

Argued June 2, 1998.
Filed Sept. 22, 1998.

Paul R. Bartolacci, Philadelphia, for appellant.

John P. McBlain, Media, for appellee.

Before KELLY, J., CERCONE, President Judge Emeritus, and MONTEMURO *, Judge.

MONTEMURO, Judge:

Appellant, Norma M. Pia, appeals from the judgment entered against her in the Court of Common Pleas of Chester County on July 24, 1997. We affirm.

On May 31, 1992, a produce warehouse owned by Appellant caught fire. Trooper Richard O'Brien of the Pennsylvania State Fire Marshal's office conducted an investigation into the cause of the blaze, and concluded that the fire resulted from an electrical malfunction in the southwest corner of the building. Many of the electrical connections for the entire structure were located there, as were an electrical forklift, pallet jack and battery chargers. The Trooper was unable, however, to identify unequivocally the source of the fire.

Appellant retained the services of a fire cause and origin investigator who also determined that the fire began in the southwest corner of the building. He specifically noted evidence of intense burning and electrical activity in a metering cabinet connected to electrical service throughout the warehouse. An electrical engineer hired by Appellant discovered signs of intense heat and electrical activity concentrated in one particular wire in the cabinet.

Appellant and her experts removed and retained only the metering cabinet and some other items involving the building's electrical wiring which they deemed relevant, leaving the remaining electrical equipment in place. Appellant's tenants then cleaned the premises. When Appellees asked to examine the electrical machinery which had been left on site, they were informed that it was no longer available.

Acting on the conclusions of her consultants, Appellant filed suit against Appellees, Robert Perrotti and his company, V.P. Electrical Contracting, Inc. (V.P.), claiming that they inadequately tightened the wires inside the metering cabinet, a failure which caused the fire. Following trial, the jury found in favor of Appellees. The trial court denied post-trial motions and entered judgment in favor of Appellees on July 24, 1997. This timely appeal followed.

Appellant raises three issues:

1. Did the trial court err in instructing the jury that it could draw an adverse inference against [Appellant] based upon the alleged inability of [Appellees] to inspect certain fire scene evidence which was collateral to [Appellant's] theory of liability against [Appellees] when:

(a) the record contained no evidence that [Appellant] or her representatives had possession or control of the evidence complained of, or disposed of the evidence complained of;

(b) the record contained no evidence that [Appellees] ever attempted to obtain the evidence they claimed they were entitled to inspect but were unable to inspect;

(c) the record contained no evidence that [Appellees] suffered any non-speculative prejudice because of their alleged inability to inspect certain evidence;

(d) the record contained no evidence of fault, bad faith or intent on the part of [Appellant] or her representatives with regard to the unavailability of the collateral fire scene evidence; and

(e) all of the evidence relied upon by [Appellant] to prove her case was properly preserved and available for inspection by [Appellees]?

(2) Did the trial court err by eliminating V.P. Electrical Contracting, Inc. as a defendant in its instructions to the jury and on the jury verdict slip, when [Appellant] presented evidence that the electrical work which she claimed caused the fire at her property was performed by employees of V.P. Electrical Contracting, Inc.?

(3) Did the trial court usurp the function of the jury by giving an instruction with respect to the standard of care applicable to the work of the defendants, when

---

* Retired Justice assigned to Superior Court.

[Appellant] presented evidence from a qualified electrical engineering expert that the standard of care which [Appellees] should have followed was different than the standard defined by the court?

(Appellant's Brief at 4–5).

■ Appellant first claims that the trial court erred in charging the jury that it could draw a spoliation inference against her for failure to preserve all the electrical equipment in the warehouse. In charging the jury, the trial judge's duty is to state accurately the applicable principles of law in plain language, and to assist the jury in applying the evidence to those principles. *Hoy v. Angelone*, 456 Pa.Super. 596, 691 A.2d 476, 484 (1997). "[A] trial judge may not instruct the jury on law inapplicable to the matter before it." *McKee by McKee v. Evans*, 380 Pa.Super. 120, 551 A.2d 260, 272 (1988).

Prior to trial, Appellees moved for summary judgment claiming that without the missing equipment, they could not adequately rebut causation. The trial court determined that this sanction was too harsh and instead presented the following charge to the jury:

Also, with regard to the proof of other causes, if you find that there were materials, and I believe it's been argued to you that there was other equipment or chargers or other things in the particular areas where the fire started, if you find that there were things in that area which were under the plaintiff's control and that the plaintiffs disposed of these materials before the defendant had an opportunity to inspect them and that these materials were relevant, that is should have been recognized as bearing on the issue of what did or did not cause this fire, then you may, if you wish, infer that if these materials had been retained and had been able to have been inspected by the defendants, that evidence from those materials would have been unfavorable to the party who made them unavailable.

Again, there is a dispute as to whether there were any such materials, under whose control they were, whether or not they were made available. And all of that is for you to decide as a factual matter.

But if you decide the facts fit that principle of law which I have enunciated, then you may if you choose, infer that had that evidence been preserved for inspection and been available to be presented to you here in court, that such evidence would have been unfavorable to the plaintiff if you find that it was the plaintiff who controlled the evidence and made it unavailable.

(N.T. at 625–27).

■ Recently, in *Schroeder v. Commonwealth, Dept. of Transp.*, Navistar International Transp. Corp., 551 Pa. 243, 710 A.2d 23 (1998), our Supreme Court adopted the tripartite spoliation test enunciated in *Schmid v. Milwaukee Electric Tool Corp.*, 13 F.3d 76 (3d Cir.1994). The relevant inquiries are "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party, and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." *Schroeder*, 551 Pa. at ——, 710 A.2d at 27. Applying this test to the instant case, we find that the trial judge properly instructed the jury.

In our analysis of the first factor we find that Appellant does bear a measure of blame for the loss of the electrical equipment. Appellant argues that because the building tenant, not she, cleaned the accident scene following the fire, she did not exercise authority over the missing items. However, the fact that she was able to preserve the items her experts deemed relevant establishes that she possessed sufficient authority over the scene to retain the forklift and other materials had she chosen to do so. She and her agents were aware that Trooper O'Brien did not specify the origin of the fire, and the equipment Appellees wished to examine was located within several feet of the allegedly incendiary metering cabinet. At the same time, we do not see clear evidence that Appellant acted with ill will or bad intentions; she simply preserved what she had been informed was important. *See Troup v. Tri-County Confinement Systems, Inc.*, 708 A.2d 825, 827 (Pa.Super.1998)(holding that where trusses from a collapsed barn under control of plaintiff were placed in a nearby field with no attempt to identify the defective trusses

for defendant's inspection, some spoliation sanction, but not summary judgment, was appropriate).

As to the second factor, we find that the absence of the equipment resulted in some prejudice to Appellees. At trial, Appellant placed the metering cabinet in front of the jury and argued that the fire originated in wires negligently installed by Appellees. Thus, the jury was led to believe that the cabinet was the source of the blaze. Appellees were unable to rebut this theory with evidence of alternative causes because they had no access to the other electrical equipment in the area. Indeed, evidence existed that the electric forklift, pallet jack and battery charger could have caused the disaster: Trooper O'Brien identified the southwest corner of the building as the fire's point of origin and determined that an electrical malfunction was the cause. He was unable to rule out as a source the electrical items Appellees wished to inspect, the unavailable equipment had been located within several feet of the metering cabinet, and testimony was presented that the forklift had been malfunctioning.

In the instant situation, however, Appellees are not as severely harmed by the absence of the equipment as in those cases in which the allegedly faulty product in a manufacturing defect case disappears and defendants are deprived of the opportunity to examine the item for possible misuse, etc. Here, Appellees were able to examine the object posited by Appellant as the source of the blaze, and to present a defense to the accusation of negligence. *See Schroeder*, 551 Pa. at ——, 710 A.2d at 28 (where claim for improper maintenance of a roadway could be defended even in the absence of evidence pertaining to alternative cause of accident, allegedly defective vehicle, a lesser sanction than summary judgment, i.e., a spoliation charge, is proper.)

■ In light of the above analysis of the degrees of fault and of prejudice arising from loss of the electrical components, we find that the trial judge acted appropriately with regard to the third factor, degree of sanction, by applying the least damaging penalty, a spoliation charge to the jury. We reach this decision after concluding that Appellant does bear some but not overwhelming responsibility for the lost equipment, and that Appellees were prejudiced, but not to the extent of being unable to present a viable defense. *See id; Troup*, 708 A.2d at 827. We decline to hold, as Appellant suggests, that a plaintiff must in every case preserve the entire fire scene. Rather, we reach our decision that the spoliation charge was appropriate here in light of the evidence that 1) the equipment at issue was located in the area identified as the point of origin for the fire; 2) the fire was electrical in origin; and 3) the equipment was electrical in nature and in close proximity to the metering cabinet identified by Appellant as the source of the blaze.

■ Appellant next argues that the trial judge impermissibly removed Appellee V.P. Electrical Contracting from the jury verdict slip. "The question of whether the jury should be instructed on a given point depends upon the facts and the issues in a particular case. Where facts are in dispute, the jury must be properly instructed so that they may resolve the conflict." *Sprague v. Walter*, 441 Pa.Super. 1, 656 A.2d 890, 921 (1995) (citations omitted). "The charge of the trial court should not exclude any theory or defense that has support in the evidence." *Rizzo v. Michener*, 401 Pa.Super. 47, 584 A.2d 973, 977 (1990), *allocatur denied*, 528 Pa. 613, 596 A.2d 159 (1991).

■ Appellant brought suit against Robert Perrotti as well as V.P. Electrical Contracting. Evidence produced at trial demonstrated that more than one employee performed work on the electrical connections in the building for Appellee V.P., Appellant's theory of the case was that the electrical connections inside the metering cabinet were inadequately made, resulting in the fire. The only person who actually made the suspect connections was Appellee Perrotti, and no evidence was produced as to negligence of any other employee. Therefore, Appellee V.P. could only be held liable through the negligence of Appellee Perrotti, and, as a result, the trial court acted properly in removing the company's name from the verdict slip. In fact Appellees' attorney conceded that if the jury found Appellee Perrotti negligent, then

Appellee V.P. would also be liable by extension. Moreover, given the above discussion, even if the trial court exceeded his authority, Appellant was not harmed.

Appellant's final claim is that the trial court improperly instructed the jury on the standard of care for making the electrical connection inside the metering cabinet. Appellant argues that specific torque requirements, listed in professional manuals, must be achieved, and, further, that the only way to guarantee a sufficient connection is by means of a torque wrench,[1] a device not used by Appellees. The trial judge charged the jury that Appellees were required to make a thoroughly good connection, rather than instructing, as Appellant desired, on the necessity of a torque wrench.

■ The record reveals that the trial judge properly instructed as to the standard of care and that Appellant's evidence concerning use of a torque wrench is actually relevant only to proving whether that standard was satisfied. Appellant's own expert testified that a thoroughly good connection was required, and that the only way to assure compliance with this standard was by using a torque wrench. As the trial court aptly stated:

> The evidence in this case does not support [Appellant's] contention that the failure to use a torque wrench is negligence *per se.* It may be the standard way of accomplishing a required result, but it is not the only way nor is the use of a torque wrench mandated. [Appellant] contended that without the use of a torque wrench, the applicable standard could not be assured of having been met, but it is the result itself, not the methodology employed, which does or does not constitute the negligence which is alleged to have occurred in this incident.

(Trial Ct. Op. at 2). Accordingly, based upon the foregoing, we affirm the order of the trial court.

Judgment affirmed.

---

1. A torque wrench is a wrench with an attached measuring device which numerically demonstrates the pressure applied.