# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elizabeth King,              :
          Appellant     :
                        :    No. 1155 C.D. 2015
       v.                :    Argued: April 12, 2016
                        :
Pittsburgh Water and Sewer    :
Authority                   :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                HONORABLE ROBERT SIMPSON, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION**
**BY JUDGE SIMPSON**                 **FILED: May 27, 2016**

This appeal raising a spoliation issue involves the notice requirement of the "Utility service facilities" exception to local agency immunity set forth in Section 8542(b)(5) of the statute commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act). 42 Pa. C.S. §8542(b)(5).

More particularly, Elizabeth King (King) asks whether the Court of Common Pleas of Allegheny County[1] (trial court) erred in denying her post-trial motions after a non-jury verdict in favor of the Pittsburgh Water and Sewer Authority (Authority) in her negligence suit against the Authority. King alleged she suffered injuries when her leg fell through a broken and corroded sewer grate, which, she averred, the Authority negligently failed to maintain. King argues the trial court erred in failing to grant her motion for judgment *non obstante veredicto* (judgment n.o.v.) or a new trial as a sanction for the Authority's spoliation of

---

[1] The Honorable Michael E. McCarthy presided.

evidence, where the Authority purposefully destroyed the sewer grate that injured King after it received notice the sewer grate was connected to a "law claim." She further asserts the trial court's failure to issue a sanction against the Authority for its purposeful spoliation of evidence was contrary to public policy. Upon review, we affirm.

## I. Background

In November 2012, King filed suit against the Authority in the trial court.[2] Through her complaint, King alleged that, in August 2012, she attempted to enter a vehicle parked along the curb near the intersection of Greenfield Avenue and Frank Street in the City of Pittsburgh (City). As she opened the front passenger vehicle door and attempted to enter the vehicle, her right foot and leg fell through a hole in a sewer grate located on Frank Street near its intersection with Greenfield Avenue. King alleged that prior to August 2012 the grate was allowed to fall into a state of disrepair in that it was rusty and contained a hole that she fell through. As a result, King alleged, she suffered a large laceration on her right leg.

King averred the Authority owned, possessed or controlled the premises located at the corner of Greenfield Avenue and Frank Street, including the sewer grate. Thus, she alleged, the Authority was responsible to maintain the premises and the sewer grate. King alleged a dangerous condition existed on the premises in that a hole existed in the sewer grate. She alleged the Authority

---

[2] King's suit also named the City of Pittsburgh as a defendant; however, the City was later dismissed from the suit by stipulation of the parties.

2

negligently failed to maintain the sewer grate, thereby allowing a hole to form and creating a dangerous condition. King further averred the Authority had actual or constructive notice of the dangerous condition and negligently failed to remedy it. She alleged that, had the Authority exercised reasonable care in the maintenance and inspection of the dangerous condition, it could have made the condition safe.

The Authority responded by filing an answer with new matter. In its new matter, the Authority averred it was immune from liability under the Tort Claims Act. Among other things, the Authority alleged it had no actual or constructive notice of the allegedly dangerous condition related to the sewer grate prior to the incident alleged in King's complaint. King filed a reply to the Authority's new matter.

The case then proceeded to arbitration, after which a board of arbitrators found in favor of the Authority and against King. King appealed to the trial court. She waived her right to a jury trial. The parties conducted discovery. Thereafter, the Authority filed a motion for summary judgment, which the trial court denied.

In May 2015, the trial court held a non-jury trial. At trial, King testified on her own behalf and submitted documentary evidence, including a photograph of the damaged sewer grate. Additionally, Rick Obermeier, an Authority employee, testified.

After the trial, the trial court entered a non-jury verdict in favor of the Authority and against King. King filed post-trial motions in which she asserted the crux of the case was whether the facts established liability against the Authority under the utility service facilities exception to local agency immunity. King acknowledged that this exception required her to prove the Authority had actual or constructive notice of the dangerous condition of the sewer grate as a prerequisite to establishing liability. King conceded she did not present evidence of actual notice of the broken sewer grate, but rather she presented evidence of constructive notice of the dangerous condition in the form of testimony and documents showing the Authority was in the vicinity of the broken sewer grate six times in the two-and-a-half years preceding her injury.

King further argued that Obermeier testified the Authority destroyed the sewer grate after it received actual notice that the grate was broken and connected to a "law claim." Reproduced Record (R.R.) at 87a. She asserted the trial court questioned Obermeier regarding the Authority's general practice of preserving evidence after receiving notice of a "law claim," and Obermeier confirmed it was not the Authority's practice to "bag and tag" or preserve evidence. Id. King further averred that, at closing argument, her counsel argued that, within the concept of constructive notice was the notion that after a defective condition exists for a certain period of time, the entity responsible for maintaining the alleged hazard "could reasonably be charged with notice," and that argument strengthens with each day, month or year the condition exists. Id.

4

King asserted the Authority's standard practice of spoliation, which occurred here, deprived her of the ability to test the broken grate for a scientific, definitive determination as to how long the grate was broken before her injury. Thus, she argued, the Authority based its entire defense on the concept of notice and engaged in spoliation that prevented her from gathering evidence as to that notice. As such, King asserted the Authority's spoliation of the sewer grate mandated a finding of liability against the Authority.

King further asserted that in Schroeder v. Department of Transportation, 710 A.2d 23 (Pa. 1998), the Pennsylvania Supreme Court, adopting the Third Circuit's approach in Schmid v. Milwaukee Electric Tool Corp., 13 F.3d 76 (3d Cir. 1994), held that, in determining the proper penalty for spoliation of evidence, a court should consider: (1) the degree of fault of the party who destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and, (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct.

Here, King argued, the testimony indicated, not only did the Authority destroy the sewer grate, but it was the Authority's practice to destroy such evidence in every case. King maintained the resulting prejudice to her and all other similarly situated plaintiffs was, and will be, severe because this spoliation prevents plaintiffs from establishing the length of time an alleged defect exists, which directly relates to proving constructive notice. King asserted that, in such circumstances, had the Authority preserved and inspected the evidence, it would have been determined that the defective condition existed for a sufficient amount

5

of time to establish constructive notice against the Authority. Thus, King requested the trial court vacate its verdict in favor of the Authority and enter judgment n.o.v. in her favor. Alternatively, King sought a new trial in which the trial court would foreclose the Authority from asserting a notice defense as a sanction for spoliation of evidence.

The Authority filed a response to King's post-trial motions. The parties also filed briefs. Thereafter, the trial court issued an order denying King's post-trial motions. King appealed, and the trial court directed her to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which she did. The trial court then issued an opinion pursuant to Pa. R.A.P. 1925(a).

In its opinion, the trial court explained this matter arose from a personal injury claim pursued under the utility service facilities exception to local agency immunity. The trial court stated the Authority acknowledged that it "controls water and catch basin main lines and other related appurtenances" within the City, and it admitted in its answer and new matter that it maintained the catch basin grate located near the corner of Frank Street and Greenfield Avenue. Tr. Ct., Slip Op., 9/2/15, at 3 (citing the Authority's Answer and New Matter at ¶21). The Authority does not regularly or routinely inspect catch basin grates within its service area. Rather, it reacts to reports of apparent disrepair or of any hazards presented by catch basin grates when reports are received from the public or Authority personnel who incidentally observe such hazards or disrepair in the course of performing other assignments.

The trial court stated, to avail herself of the utility service facilities exception, an injured plaintiff must establish the local agency either had actual notice or could reasonably be charged with notice under the circumstances of a dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

The trial court explained King did not establish the Authority received any complaints, damage reports, repair orders or other records pertinent to the condition of the catch basin grate located near Frank Street and Greenfield Avenue at any time prior to the accident that occurred here. King correctly observed, however, that notice could also be established inferentially. Thus, where the record reveals a hazard existed over a substantial period, a court may reasonably presume the predicate of notice.

The trial court explained that King asserted the Authority's destruction of the catch basin grate deprived her of the opportunity to prove the grate was likely damaged for some time and that an inference of notice of such damage was appropriate. King "insist[ed] that an inspection of the catch basin grate may have revealed that the grate was badly corroded and broken for a long time, such that [the Authority] knew or should have known of the hazard[.]" Tr. Ct., Slip Op., at 4 (quoting King's Pa. R.A.P. 1925(b) Statement at 2). King further maintained that, because the Authority disposed of the catch basin grate— "apparently melted it down"—after receiving notice of King's legal claim, the Authority should reasonably be charged with notice of a dangerous condition under 42 Pa. C.S. §8542(b)(5) as an appropriate sanction. Id. That sanction, King

7

argued, should take the form of either judgment in her favor or a new trial in which the Authority was barred from advancing a notice defense.

The trial court explained that spoliation, by definition, is the non-preservation or significant alteration of evidence that is pertinent to pending or future litigation. PTSI, Inc. v. Haley, 71 A.3d 304 (Pa. Super. 2013). In its most obvious form, spoliation occurs in the context of pending litigation when a party breaches a court's preservation of evidence order. In that context, a court may reasonably presume that if evidence subject to an order is later lost, altered or destroyed, that evidence, had it remained available and fully preserved, would have established facts adverse to the party that had possession or control of the evidence while subject to the order. In such instances, an appropriate spoliation sanction may be one that accepts as true any factual allegation that the evidence would have been offered to prove had it not been destroyed.

Nevertheless, the trial court stated, the more common penalty for spoliation is less severe. It does not result in declaring the non-offending party's allegation true, but rather merely permits an inference that the missing evidence would have been unfavorable to the party that destroyed it. See Schroeder. The trial court stated that has been the view of our courts for some time. See McHugh v. McHugh, 40 A. 410 (Pa. 1898). Thus, in McHugh, the Supreme Court stated:

> The spoliation of papers and the destruction or withholding of evidence which a party ought to produce gives rise to a presumption unfavorable to him, as his conduct may properly be attributed to his supposed knowledge that the truth would operate against him. This principle has been applied in a great variety of cases, and it is now so well established that it is unnecessary to do more than state it.

8

Id. at 411.

Here, the trial court explained, King had no need to rely on a claim of spoliation in order to establish the catch basin grate was broken and resulted in injury to her. The Authority did not vigorously dispute King's account of the event or her injuries. Instead, it argued that, regardless of any injury King suffered from a broken catch basin grate, she could not recover because the record contained no evidence that the Authority had prior actual or constructive notice of any hazardous condition. As such, the Authority asserted, King did not establish the exception to local agency immunity under 42 Pa. C.S. §8542(b)(5).

The trial court further stated, although King argued that an inspection of the grate by an expert after the injury might have revealed the grate was badly corroded or broken for a substantial period of time, she offered no competent testimony to that effect. Nor was any testimony or case law provided that corrosion and decay may be presumed to occur over time and that, on that basis, notice may be inferred. The trial court stated the mere passage of time does not give rise to an inference that a structure might be impaired or unsafe, so as to impute notice of a hazard. See generally Walden v. City of Hawkinsville, Georgia, 191 Fed Appx. 836 (11th Cir. 2006) (culvert had been in place for 100 years or more).

If spoliation occurred, the trial court stated, when considering a proper sanction, a court must weigh three factors: (1) the degree of fault of the party who destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and, (3) whether there is a lesser sanction that will avoid substantial unfairness to

the opposing party and, where the offending party is seriously at fault, will deter similar conduct by others in the future.  See PTSI.

Here, the trial court stated, King did not establish the second factor, prejudice.  Because King has not—or cannot—establish that, had the grate been preserved, she could have shown both the approximate date of any damage to the grate and the fact of notice or even constructive notice to the Authority of such damage, King did not establish prejudice.  Rather, the trial court stated, King asked, in effect, that some degree of prejudice be presumed because the grate could not be examined.  However, the trial court explained, King presented no evidence that any expert examination of the grate would result in a determination that the Authority would have had notice of the broken grate in advance of her injury.

## II. Issues

On appeal,[3] King argues the trial court erred in failing to grant her motion for judgment n.o.v. or a new trial as a sanction for the Authority's

---

[3] As to the denial of a motion for judgment n.o.v., we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner.  Reott v. Asia Trend, Inc., 7 A.3d 830 (Pa. Super. 2010).  We will reverse a trial court's denial only when we find an abuse of discretion or an error of law that controlled the outcome of the case.  Id.

There are two bases on which judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law; or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.  Id.  With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor.  Id.  With the second, the court reviews the record and concludes the evidence was such that a verdict for the movant was beyond peradventure.  Id.

In addition, in responding to a request for a new trial, a trial court must follow a two-step process.  Daddona v. Thind, 891 A.2d 786 (Pa. Cmwlth. 2006).  First, it must decide whether one or more mistakes occurred at trial.  Id.  Second, if the court concludes a mistake occurred, it must determine whether the mistake was a sufficient basis for granting a new trial.  Id.  The harmless
**(Footnote continued on next page…)**

10

spoliation of evidence, where the Authority purposefully destroyed the sewer grate that injured her after it received notice the sewer grate was connected to a "law claim." King also contends the trial court's failure to issue a sanction against the Authority for its purposeful spoliation of evidence was in error as contrary to public policy.

## III. Discussion
### A. Judgment n.o.v. or New Trial as Spoliation Sanction
### 1. Contentions

King first argues this Court should reverse the trial court's order that denied her motion for judgment n.o.v. or, alternatively, a new trial in which the Authority was precluded from offering a notice defense. She asserts the trial court reached an erroneous finding that the Authority's spoliation of evidence did not warrant a sanction under the three-factor test adopted by our Supreme Court in Schroeder. Specifically, King contends, the trial court improperly held that King did not establish she was prejudiced by the Authority's spoliation.

---

**(continued…)**

error doctrine underlies every decision to grant or deny a new trial. Id. A new trial is not warranted merely because some irregularity occurred during the trial or another trial judge would rule differently; the moving party must show prejudice resulting from the mistake. Id.

As an appellate court, to review the two-step process of the trial court for granting a new trial, we also employ a two prong analysis. Id. First, we examine the decision of the trial court that a mistake occurred. In so doing, we must apply the appropriate standard of review. Id. If the alleged mistake involved an error of law, we must scrutinize for legal error. Id. If, on the other hand, the alleged mistake involved a discretionary act, we must review for an abuse of discretion. Id. If there were no mistakes at trial, we must affirm a decision by the trial court to deny a new trial as the court cannot order a new trial where no error of law or abuse of discretion occurred. Id.

11

King maintains she was prejudiced by the Authority's purposeful destruction of the sewer grate because without an examination of it, King was unable to offer any testimony as to how long the grate may have been in a state of disrepair. King argues that, being unable to present an opinion as to the period of time the grate may have been broken or badly corroded prevented her from rebutting the Authority's notice defense and establishing an inference that the Authority had constructive notice of the grate's condition prior to her injury. Thus, King contends, her inability to examine and present at trial the only piece of physical evidence that could be used to establish constructive notice substantially prejudiced her case-in-chief.

King points out that in Schroeder, our Supreme Court "recognized that a common penalty for spoliation is a jury instruction allowing an inference that the missing evidence would have been unfavorable to the party that destroyed it." Id. at 26-27 (citing Schmid, 13 F.3d at 78). King argues that the Schmid analysis, adopted by our Supreme Court in Schroeder, was applied in Pia v. Perrotti, 718 A.2d 321 (Pa. Super. 1998), where a warehouse owner sued an electrical contracting firm after the destruction of her warehouse by an electrical fire. Upon an investigation of the warehouse after the fire, the owner preserved only the electrical equipment she deemed relevant to the cause of the fire. The common pleas court gave the jury a spoliation instruction. The Superior Court upheld the instruction, finding the warehouse owner was at fault for failing to preserve all of the electrical equipment and the defendant electrical contracting firm was prejudiced in its inability to present alternative causes of the fire.

Under the <u>Schmid</u> analysis, King contends, the first prong is established where a party knows litigation is pending or likely, and it is foreseeable that discarding the evidence will prejudice the opposing party. <u>Mt. Olivet Tabernacle Church v. Edwin L Wiegard Div.</u>, 781 A.2d 1263 (Pa. Super. 2001). Here, King argues, under the first prong, the Authority bears complete fault for destroying the evidence. She asserts the Authority admittedly destroyed the sewer grate. <u>See</u> Tr. Ct., Non-Jury Trial, Notes of Testimony (N.T.), 5/5/15, at 29; R.R. at 53a. Moreover, the Authority knew litigation was likely because it had actual notice that the grate was connected to a "law claim," and, therefore, it was also aware that destroying the grate would prejudice King to a high degree. Further, the Authority's testimony established it is the Authority's practice to destroy such evidence in every case. N.T. at 41; R.R. at 65a.

King maintains the Authority's conduct is more egregious than that of the offending party in <u>Pia</u> because, unlike in <u>Pia</u> where the evidence thought relevant by the offending party was preserved, here no attempt was made to preserve the sewer grate. Even worse, King argues, while the offending party in <u>Pia</u> ostensibly acted in good faith by preserving the evidence she believed was relevant, the Authority here had notice the grate was likely to be the subject of litigation and nonetheless purposefully destroyed it. Thus, King contends, the Authority bears complete fault for destruction of the sewer grate.

Under the second prong, King asserts, the court must measure the degree of prejudice suffered by the opposing party. In its opinion, the trial court wrote that King did not satisfy this prong because no evidence was provided that

13

an examination of the grate "might have revealed that the grate had been badly corroded or broken for a substantial period of time" nor how such an examination "would have resulted in a determination that [the Authority] would have had notice of the broken grate …." Tr. Ct., Slip Op. at 5-6. To support the point, the trial court added, "[no] testimony or case law was provided to the effect that corrosion and decay may be presumed to occur over time and that, on that basis, notice may be inferred." Id.

King argues the trial court's reasoning puts the "cart before the horse." Br. of Appellant at 16. To begin, King asserts, the reason she was unable to show an examination of the grate "might have revealed that the grate had been badly corroded or broken for a substantial period of time" was because of the Authority's act of spoliation. Id. (quoting Tr. Ct., Slip Op., at 5). King maintains this is precisely the reason she was so prejudiced by the spoliation. She contends an examination of the grate itself was the only means through which such a determination could be made—when the Authority destroyed the grate, it also destroyed any chance for King to prove the grate was in a state of disrepair for a substantial amount of time. In short, King argues, the fact that she was unable to show through any alternative means that the grate may have been in a state of disrepair for a substantial period prior to the incident directly reflects the prejudice she suffered as a result of its spoliation.

King further asserts the trial court supplemented its opinion by stating, even if King could show the grate was badly corroded or broken for a substantial period, such evidence would still be insufficient to prove the Authority should be

14

charged with notice. This is because "[t]he mere passage of time does not give rise to an inference that a structure might be impaired or unsafe, so as to impute notice of a hazard." Br. of Appellant at 17 (quoting Tr. Ct., Slip Op. at 6). In support of this statement, the trial court cited Walden, an Eleventh Circuit opinion that is not binding here.

Regardless of any Eleventh Circuit precedent, King maintains, Pennsylvania law is clear that the amount of time a defect or dangerous condition exists is an important consideration in charging a party with constructive notice. See Rogers v. Horn & Hardart Baking Co., 127 A.2d 762, 764 (Pa. Super. 1956).

Further, King argues, the trial court's point that "no testimony or case law [was] provided to the effect that corrosion and decay may be presumed to occur over time and that, on that basis, notice may be inferred," Br. of Appellant at 18 (quoting Tr. Ct., Slip Op. at 5-6), should not defeat King's ability to satisfy the second prong. King contends, if the Authority did not destroy the grate, an expert could have examined it and from that examination could have formulated an opinion as to how the corrosion and decay process occurs generally and how it occurred specifically to this grate. However, because of the Authority's spoliation, King was barred from having an expert examine the grate.

Therefore, King asserts, under the second prong, she was prejudiced by the Authority's intentional action of spoliation. Discarding the sewer grate destroyed the only available physical evidence. Absent an examination of the

15

grate, King contends she had no way to prove the length of time the defect existed, which, under Pennsylvania law, goes directly to constructive notice.

Lastly, King maintains, under the third prong, the only proper sanction at this point is for this Court to reverse the trial court's denial of King's post-trial motions. King argues the Authority stripped her of her right and ability to prove constructive notice when it intentionally destroyed the sewer grate. As a bench trial, King asserts, she was offered no recourse in the form of a jury instruction, nor was she provided any alternative relief in the form of some other sanction. King contends that, because she established: (1) the Authority destroyed the evidence when it had notice it was connected to a "law claim"; (2) it was foreseeable that the destruction would prejudice King in pursuing that claim; and, (3) that the destruction did, in fact, prejudice King's case-in-chief, she should now be granted a sanction against the Authority.

**2. Analysis**

Generally, a local agency is immune from suit for injuries to person or property. See Section 8541 of the Judicial Code, 42 Pa. C.S. §8541. However, liability may be imposed where (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity, and (2) the claim falls within one of the statutory exceptions to governmental immunity in Section 8542(b) of the Judicial Code. 42 Pa. C.S. §8542; Mandakis v. Borough of Matamoras, 74 A.3d 301 (Pa. Cmwlth. 2013). Of relevance here is Section 8542(b)(5), which provides an exception to immunity for:

16

(5) *Utility service facilities*.--<u>A dangerous condition of the facilities of</u> steam, <u>sewer</u>, water, gas or electric systems <u>owned by the local agency and located within rights-of-way, except that the claimant to recover must establish</u> that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and <u>that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition</u>.

42 Pa. C.S. §8542(b)(5) (emphasis added). Exceptions to immunity are narrowly construed. <u>Lory v. City of Phila.</u>, 674 A.2d 673 (Pa. 1996).

The central issue here is whether the Authority had notice of the allegedly dangerous condition of the sewer grate at a sufficient time prior to the incident to have taken measures to protect against the dangerous condition. Before the trial court, King conceded she did not present evidence that the Authority had *actual* notice of the allegedly dangerous condition. <u>See</u> N.T. at 56; R.R. at 80a; R.R. at 87a (King's Motion for Post-Trial Relief). Rather, King argued the Authority had constructive notice.

"Spoliation of evidence is the non-preservation or significant alteration of evidence for pending or future litigation." <u>Pyeritz v. Commonwealth</u>, 32 A.3d 687, 692 (Pa. 2011). The doctrine of spoliation provides that a party may not benefit from its own destruction or withholding of evidence. <u>Manson v. Southeastern Pa. Transp. Auth.</u>, 767 A.2d 1 (Pa. Cmwlth 2001).

"When a party to a suit has been charged with spoliating evidence in that suit (sometimes called 'first-party spoliation'), [our Supreme Court] [has]

17

allowed trial courts to exercise their discretion to impose a range of sanctions against the spoliator." Pyeritz, 32 A.3d at 692 (citing Schroeder). The decision of whether, and how, to sanction a party rests within the sound discretion of the trial court. Creazzo v. Medtronic, Inc., 903 A.2d 24 (Pa. Super. 2006). Thus, when reviewing a court's decision to grant or deny a spoliation sanction, we must determine whether the court abused its discretion. Mt. Olivet Tabernacle Church.

An abuse of discretion exists when the trial court renders a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will. Harman ex rel. Harman v. Borah, 756 A.2d 1116 (Pa. 2000). A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Id. "Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." Id. at 1123 (citations omitted).

In Schroeder, our Supreme Court, adopting the Third Circuit's approach in Schmid, held that, in determining the proper penalty for spoliation of evidence, a court should consider: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and, (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct. After a court conducts this three-factor analysis, it is in a better position to determine what sanction is appropriate. Troup v. Tri-Cnty. Confinement Sys., Inc., 708 A.2d 825 (Pa. Super. 1998).

18

In Tri-County Confinement, the Superior Court noted that sanctions available to a trial court under the spoliation doctrine are: dismissal; striking out pleadings or portions of pleadings; prohibiting the introduction of evidence; and, permitting the inference at trial that the destroyed evidence would have been harmful to the offending party. See Schroeder.

Here, in rejecting King's intertwined assertions relating to spoliation and constructive notice under the "utility service facilities" exception to local agency immunity, the trial court explained (with emphasis added):

> To avail [herself] of the exception stated in §8542(b)(5), an injured claimant must establish that the local agency either had actual notice of the dangerous condition at a sufficient time in advance of the event causing the injury to have either effected repairs or taken other adequate measures to protect against such injuries or could reasonably be charged with such notice. [King] concedes that proof of actual or constructive notice of a dangerous condition notice is a necessary element of her claim.

> [King] did not establish that any complaints, damage reports, repair orders or other records pertinent to the condition of the catch basin grate at the Frank Street and Greenfield Avenue location had been received by [the Authority] at any time in advance of the accident and injury that resulted in this case. [King] correctly observes, however, that notice may also be established inferentially. Where a record demonstrates that a hazard has existed over a substantial length of time, a court may reasonably presume the predicate of notice.

> In the matter at hand, [King] argues that [the Authority's] destruction of the catch basin grate deprived [King] of the opportunity to demonstrate to the court that the grate had likely been damaged for some time and that an inference of notice of such damage was appropriate. [King] insists that an inspection of the catch basin grate 'may have revealed that the grate was badly corroded and broken for a long time such that [the

19

Authority] knew or should have of the hazard[.]'" [King's 1925(b) Statement at 2]. Because [the Authority] disposed of the catch basin grate – apparently 'melted it down' – after receiving notice of [King's] legal claim, [King] maintains that [the Authority] should reasonably be charged with notice of a dangerous condition under [42 Pa. C.S. §8542(b)(5)] as an appropriate sanction. That sanction, [King] argues, should take the form of either judgment in [King's] favor or a new trial in which [the Authority] is barred from advancing a notice defense. …

In its most obvious form, spoliation occurs in the context of current litigation when a party breaches a preservation of evidence order that has been put in place by the court. In that context, a court may reasonably presume that if evidence that is subject to such an order is subsequently lost, altered or destroyed, that evidence, had it remained available and fully preserved, would have established facts adverse to the party that had possession or control of the evidence while subject to the preservation order. In such instances, an appropriate spoliation sanction may be one that accepts as true any factual allegation that the evidence would have been offered to prove had it not been destroyed.

The more common penalty for spoliation, however, is less severe. It does not result in declaring the non-offending party's allegation true, but merely permits an inference that the missing evidence would have been unfavorable to the party that destroyed it. [See Schroeder]. …

In the matter at hand, [King] has no need to rely upon a claim of spoliation to establish that the catch basin grate … was broken and resulted in an injury to [King]. [The Authority] does not vigorously dispute [King's] account of events or her injuries. [The Authority] instead argues that, irrespective of any injury resulting to [King] from a broken catch basin grate, she cannot recover against [the Authority] because the record provides no evidence that [the Authority] had actual or constructive advance notice of any hazardous condition. Therefore, plaintiff failed to establish any exception to governmental immunity under [42 Pa. C.S. §8542(b)(5)].

Although [King] contends that an inspection of the grate by an expert after the fact of the injury might have revealed that the grate had been badly corroded or broken for a substantial period of time, [King] offered no competent testimony to that effect. Nor was any testimony or case law provided to the effect that corrosion and decay may be presumed to occur over time and that, on that basis, notice may be inferred. The mere passage of time does not give rise to an inference that a structure might be impaired or unsafe, so as to impute notice of a hazard. [See generally Walden].

If spoliation has occurred, then, when considering an appropriate sanction for such conduct, a trial court must weigh three factors …. In this case, the second of those essential factors has not been established by [King]. Because [King] has not - or cannot -- establish that, had the grate been preserved, [King] could then have demonstrated both the approximate date of any damage to the grate and the fact of notice or even constructive notice to [the Authority] of such damage, prejudice to [King's] case has not been established. Rather, [King] asks, in effect, that some degree of prejudice be presumed because the grate cannot be examined. No evidence was provided that any expert examination of the grate would have resulted in a determination that [the Authority] would have had notice of the broken grate in advance of [King's] accident and injury.

Tr. Ct., Slip Op., at 3-6. No abuse of discretion is apparent in the trial court's denial of King's requested spoliation sanction of either judgment n.o.v. or a new trial based on the Authority's spoliation of the sewer grate.

To that end, our review of the record supports the trial court's determination that King did not offer any evidence that an inspection of the grate by an expert may have revealed the grate was badly corroded or broken for a substantial period, or that the effect of any such corrosion or decay could be presumed to occur over time and, on that basis, notice could be inferred. Indeed, King did not identify a materials expert as a possible witness or assert that she ever

21

contacted one. Additionally, King offers no explanation as to why she could not have provided such opinion evidence based on the large, color photograph of the damaged sewer grate she presented at trial. See Certified Record, Non-Jury Trial, 5/5/15, Plaintiff's Ex. 5; Br. of Appellant, Ex. B. at 5. Thus, because King did not present any competent proof that, had the grate been preserved, she could show both the approximate date of any damage and the fact of constructive notice to the Authority, she did not establish prejudice, the second prong of the Schroeder analysis. Rather, as the trial court indicated, King asked, in effect, that the trial court presume prejudice.

In addition, while the trial court did not expressly address the first prong of the Schroeder analysis, the degree of fault of the party who destroyed the evidence, we note, evaluation of that prong requires consideration of two components: the extent of the offending party's duty to preserve the evidence, and the presence or absence of bad faith. Creazzo. The duty prong, in turn, is established where: the offending party knows litigation against it is pending or likely; and, it is foreseeable that discarding the evidence would be prejudicial. Id.

Here, Authority employee Obermeier acknowledged that, when the Authority inspected the sewer grate in October 2012, it knew the grate was connected to a "law claim." N.T. at 29; R.R. at 53a. Nevertheless, the sewer grate was "scrapped" and replaced by the Authority. Id.; N.T. at 39; R.R. at 63a. Further, Obermeier confirmed it was not the Authority's practice to "bag and tag" or preserve evidence. N.T. at 41; R.R. at 65a. However, despite the Authority's knowledge that the grate was connected to a "law claim," the record does not

22

clearly show the Authority was aware that discarding and replacing the damaged sewer grate would be prejudicial. And, as set forth above, the trial court's supported determination reveals that King did not *prove* prejudice to her case as a result of the destruction of the grate.

In addition, as to the second component of fault, *i.e.*, bad faith, neither at trial nor in her post-trial motions did King assert the Authority acted in bad faith in destroying the sewer grate. Thus, consideration of the first prong of the Schroeder analysis, fault, particularly when coupled with the trial court's supported finding of lack of prejudice, does not warrant the severe spoliation sanction King seeks.

Nevertheless, King cites Pia, in which the Superior Court upheld a trial court's decision to charge a jury that it could draw a spoliation inference against a plaintiff where the plaintiff did not preserve all electrical equipment related to a fire in a warehouse she owned. King argues the Authority's conduct here is more egregious than the plaintiff in Pia, warranting a more severe sanction.

However, in neither Pia nor any other case King cites did a court determine that a grant of judgment n.o.v. or a new trial in a party's favor was an appropriate spoliation sanction. Indeed, as the Superior Court in Mount Olivet Tabernacle Church, pointed out, even in a case where the offending party was highly culpable and prejudice to the non-offending party was severe, a federal trial court declined to dismiss the offending party's case because it considered such a sanction too punitive. Id. at 1273 n.9 (citing Henkel Corp. v. Polyglass USA, Inc.,

23

194 F.R.D. 454, 456-457 (E.D. N.Y. 2000)); see also Baliotis v. McNeil, 870 F.Supp. 1285, 1289 (M.D. Pa. 1994) ("A sanction that has the 'drastic' result of judgment being entered against the party who has lost or destroyed evidence, must be regarded as a 'last resort,' to be imposed only 'if no alternative remedy by way of a lesser, but equally efficient sanction is available.'") (internal citations omitted); Thompson v. Workers' Comp. Appeal Bd. (USF&G Co.), 781 A.2d 1146, 1149 n. 4 (Pa. 2001) ("It bears noting that barring a claim entirely … is the most extreme of sanctions and not one ineluctably commanded by Schmid.").

In short, based on the trial court's supported determination that King did not suffer prejudice, the second prong of the Schroeder analysis, and the absence of bad faith by the Authority in destroying the grate, we discern no abuse of discretion in the trial court's decision not to grant King's post-trial motions. Further, although King requested such relief in her post-trial motions, in her closing argument to the trial court she merely asserted she was entitled to a spoliation inference as a sanction for destruction of the sewer grate. N.T. at 55-56; R.R. at 79a-80a.

As a final point, King cites the Superior Court's 1956 decision in Rogers for the proposition that: "What constitutes constructive notice must depend on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident." Id. at 764. However, Rogers does not support King's position. In that case, which did not involve an immunity statute, the Superior Court *reversed* a common pleas court's grant of judgment n.o.v. in

24

favor of a plaintiff who suffered a slip and fall at a restaurant allegedly caused by the existence of liquid on the floor. Among other things, the Court determined the plaintiff presented no evidence from which the fact-finder could infer that the owner had actual or constructive notice of the existence of the alleged hazardous condition that it negligently failed to correct as "there [was] no testimony as to how or when this slippery substance came to be on the floor." Id. at 764. Thus, there was nothing to show that the liquid was there for a sufficient period of time to place the restaurant on notice.

Similar to the plaintiff in Rogers, King presented no evidence here from which the trial court could infer that the Authority had constructive notice of the alleged defect in the sewer grate. King offered no evidence, expert or otherwise, as to the age of the grate or the length of time the defective condition existed, and, while she attributed this failure to the Authority's destruction of the grate, she did not establish that, had the grate been preserved, she could have demonstrated both the approximate date of any damage to the grate and the fact of constructive notice of such damage to the Authority. Thus, King presented no evidence that any expert examination of the grate would have resulted in a determination that the Authority had notice of the broken grate at a sufficient time in advance of the incident to have taken measures to protect against the dangerous condition. Rather, King relied on the argument of her attorney that she suffered prejudice as a result of the Authority's destruction of the sewer grate. However, an attorney's statements or questions at trial are not evidence. Commonwealth v. La Cava, 666 A.2d 221 (Pa. 1995); Anderson v. Dep't of Transp., Bureau of Driver Licensing, 744 A.2d 825 (Pa. Cmwlth. 2000). Similarly, statements in briefs do

25

not constitute evidence of record. <u>Sch. Dist. of Pittsburgh v. Provident Charter Sch. for Children with Dyslexia</u>, ___ A.3d ___ (Pa. Cmwlth., No. 598 C.D. 2015, filed February 26, 2016).

In addition, King offers no explanation as to why an expert could not have provided testimony regarding the length of time the damage to the grate existed or how that could have placed the Authority on constructive notice based on the large, color photograph of the damaged sewer grate she presented rather than the grate itself. <u>See</u> Plaintiff's Ex. 5; Br. of Appellant, Ex. B. at 5. Thus, we discern no basis upon which to disturb the trial court's determination on this issue.

## B. Notice/Public Policy
### 1. Contentions

King also argues that failing to issue an appropriate sanction against the Authority for its policy of spoliation—which is carried out even after it receives actual notice that key evidence in its possession is connected to a "law claim"—offends public policy as it rewards the Authority's conduct. To that end, King asserts: (1) the Authority is a public agency and its property exists for the public to walk and drive on; (2) nevertheless, the Authority admits it does not inspect its property; (3) the Authority only inspects and performs maintenance after someone complains or is hurt, N.T. at 22; R.R. at 46a; (4) the Authority then disclaims any notice of a dangerous condition of its property; and, (5) the Authority destroys evidence that could be used to establish constructive notice, N.T. at 41; R.R. at 65a.

26

King contends these practices are contrary to the "utility service facilities" exception to local agency immunity as well as public policy more broadly. She acknowledges that it is clear from the language of the exception that proof of notice is required for a plaintiff to recover. See 42 Pa. C.S. §8542(b)(5). However, she argues the statute is equally clear that actual notice is not required; rather, a plaintiff may recover if she can establish the agency "could reasonably be charged with notice under the circumstances." Id. In other words, if all other elements of liability are proven, a plaintiff will recover if she shows the agency had constructive notice of the dangerous condition.

King contends that, by including the constructive notice provision in this exception, it is evident the General Assembly sought to impose a duty on local agencies that own sewer facilities to take reasonable measures to inspect and maintain those facilities, even when not given actual notice that a defect or dangerous condition exists. See 1 Pa. C.S. §1921. King argues this makes sense because (1) the facilities are put in place for the protection and benefit of the public; and, (2) as a public utility, the Authority is charged under Pennsylvania law with a duty to inspect its property to ensure it is in a safe condition. See Section 1501 of the Public Utility Code, 66 Pa. C.S. §1501 ("Every public utility shall furnish and maintain adequate, efficient, safe, and reasonable service and facilities, and shall make all such repairs, changes, alterations, substitutions, extensions, and improvements in or to such service and facilities as shall be necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. ..."). King argues the Authority's conduct here is in derogation of its duties as a property owner and a public utility agency.

27

King asserts that, unless the Authority receives actual notice of a dangerous condition and fails to remedy the condition within a reasonable time after which an injury results, the Authority could never be held liable under the utility service facilities exception. In other words, King contends, the Authority's policy of non-inspection renders the constructive notice provision of the exception meaningless.

King further maintains that, even assuming the Authority's policy of non-inspection does not render the constructive notice provision superfluous in and of itself, the Authority's policy of spoliation most certainly does. This is because even if the Authority could be charged with constructive notice through proof that a particular condition existed for a long period, a plaintiff could never make such a showing based on the Authority's policy of spoliation. King argues this is particularly relevant in the context of injuries arising from sewer grates because through no other means, besides actually examining the grate, can an inference of constructive notice be shown.

Lastly, King urges this Court to consider the broader impacts an affirmation of the trial court's ruling may have on the public. To that end, she argues, although her injuries were by no means minor, there is no doubt they could have been far worse. King asserts the next victim may be elderly or adolescent and may suffer injuries far more severe than those King sustained. Under such circumstances, she argues, it would offend our society's common sense notion of justice to deny relief to the victim merely because the Authority owns a lot of sewer grates, has no policy for regular inspection, and destroys any and all

28

evidence that could otherwise be used to establish liability. King contends the sanction she now advocates for is necessary to deter the intentional practice of spoliation currently used by the Authority. If left unsanctioned, King argues, the Authority will continue to employ its practice of spoliation, thereby prejudicing all future similarly situated plaintiffs by preventing them from establishing the length of time an alleged defect exists, which goes directly to proving constructive notice.

## 2. Analysis

Initially, we reject the Authority's argument that King waived the issue regarding the Authority's constructive notice of the damaged sewer grate. As the Authority acknowledges, King filed her Pa. R.A.P. 1925(b) Statement *prior* to the trial court's issuance of its opinion here. Thus, at the outset of her 1925(b) Statement, King stated: "The trial court has not written an opinion. Therefore, [King] cannot readily discern the basis for the trial court's decision. Accordingly, [King] will identify the errors complained of in general terms pursuant to Pa. R.A.P. 1925(b)(4)(vi)." See Br. for Appellee, App. C. In turn, Pa. R.A.P. 1925(b)(4)(vi) provides:

> If the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the Statement with an explanation as to why the Statement has identified the errors in only general terms. In such a case, the generality of the Statement will not be grounds for finding waiver.

Id. Thus, under the circumstances presented here, King was permitted to express her claims of error in general terms. Further, although the Authority argues that, in a case such as this, where the Authority's principal defense at trial was the lack of prior constructive notice, it is not mere "generality" to omit reference to the

29

Authority's lack of prior constructive notice, our review of King's 1925(b) Statement reveals King did, in fact, briefly address the issue of constructive notice. See Br. for Appellee, App. C at 2. As such, King did not waive the issue of whether the Authority had constructive notice of the alleged dangerous condition of the sewer grate.

Notably, however, aside from King's argument that the Authority's destruction of the sewer grate prevented her from proving notice, in both her 1925(b) Statement and her brief to this Court, King does not clearly present a stand-alone argument that the City had constructive notice of the alleged dangerous condition of the sewer grate.

In any event, regardless of the Authority's claims of waiver, as explained above, the trial court correctly explained that King did not establish the Authority had actual or constructive notice of the allegedly dangerous condition of the sewer grate at issue at a sufficient time prior to the incident to have taken measures to protect against the dangerous condition. To that end, although at trial King presented six notification forms that documented complaints the Authority received concerning its water or sewer facilities at various locations within blocks of the sewer grate at issue, see N.T. at 25-27; R.R. at 49a-51a, King presented no evidence that the Authority received any complaints regarding either the sewer grate at issue or any other sewer grates at the intersection of Frank Street and Greenfield Avenue prior to the incident. N.T. at 28-29; R.R. at 52a-53a; N.T. at 32-34; R.R. at 56a-58a; N.T. at 35-36; R.R. at 59a-60a.

Further, the following exchange occurred during King's counsel's cross-examination of Obermeier, the Authority's witness:

> Q.      And to your knowledge, there wasn't any investigation as to what caused the [sewer grate at issue] to break, correct?
>
> A.      No, there would be no way how we could -- a car could have drove over it and broke it, whatever, you know.
>
> Q.      And there would have been no investigation by the [Authority] as to how long that grate may have been broken before you received the complaint about [King's] injury, correct?
>
> A.      We would have no way of knowing that.

N.T. at 29; R.R. at 53a.

In short, because notice was an essential element to King's suit, without proof of notice King could not recover under the utility service facilities exception to local agency immunity. See, e.g., Gramlich v. L. Southampton Twp., 838 A.2d 843 (Pa. Cmwlth. 2003) (rejecting plaintiffs' assertions that township had constructive notice under "streets" exception to local agency immunity of dangerous condition arising out of open drainage pipe constructed by homeowner adjacent to paved portion of public street based on township's repair of similar problems for other property owners and because road was previously paved); Kennedy v. City of Phila., 635 A.2d 1105 (Pa. Cmwlth. 1993), aff'd per curiam, 658 A.2d 788 (Pa. 1995) (rejecting plaintiffs' assertions that city had constructive notice of dangerous condition arising out of absence of pedestrian lane on street under "traffic controls" exception to local agency immunity where plaintiffs' evidence did not show city had knowledge of specific dangerous condition, i.e.,

lack of dotted lines separating area for pedestrian and vehicle lanes); Fenton v. City of Phila., 561 A.2d 1334 (Pa. Cmwlth. 1989), aff'd, 585 A.2d 1003 (Pa. 1991) (rejecting plaintiff's assertion that city had constructive notice of dangerous condition under "traffic controls" or "streets" exceptions to local agency immunity arising out of city's failure to paint left hand turning lane on street, where none of plaintiff's evidence dealt with specific problem of lack of a left hand turning lane on street or that city was informed of such a problem).

In addition, contrary to what King characterizes as the Authority's policy of "non-inspection" of its sewer grates, Authority employee Rick Obermeier testified that the Authority conducts inspections of its sewer grates in response to complaints, and that, when it responds to such complaints, it also inspects other sewer grates in the same intersection for damage. N.T. at 22-23; R.R. at 46a-47a. In Gramlich, this Court, interpreting the constructive notice language in the "streets exception," observed: "[I]t is unreasonable to require a municipality to patrol its streets every day for possible defects created by its citizens that may subject it to liability." Id. at 847, n.3; see also Brautigam v. Allegheny Cnty., (Pa. Cmwlth., No. 480 C.D. 2008, filed January 28, 2009) (unreported), slip op. at 23, 2009 WL 9102313 at *10 ("[I]t is unreasonable to require [c]ounty employees to survey every remote area of a large park in search of dangerous conditions.")[4] This statement is particularly true here where the record reveals there are approximately 25,000 sewer catch basins in the City. N.T. at 30; R.R. at 54a.

---

[4] Pursuant to Commonwealth Court Internal Operating Procedure 414, 210 Pa. Code §69.414, an unreported panel decision of this Court, issued after January 15, 2008, may be cited for its persuasive value.

32

Finally, although King advances several policy arguments, this Court must apply the language of the statute as written. See, e.g., Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co., 64 A.3d 1058, 1067 (Pa. 2013) ("in the absence of a demonstrated constitutional infirmity, courts generally must apply plain terms of statutes as written; they are to confine efforts to effectuate legislative intent—above and beyond the prescriptions of written laws—to ambiguous provisions; and they are to enforce the longstanding responsibility allocated to the policymaking branch to provide for [a particular remedy], when it is deemed appropriate, through explicit pronouncements."). And, as indicated above, "[i]n accordance with the General Assembly's expressed intent to insulate local agencies from tort liabilities, the statutory language of the exceptions to governmental immunity contained in Subsection 8542(b) of the Tort Claims Act must be construed narrowly; immunity remains the rule." Gale v. City of Phila., 86 A.3d 318, 320 (Pa. Cmwlth. 2014) (emphasis added) (citation omitted).

Based on the foregoing, we affirm.

                                         _____
ROBERT SIMPSON, Judge

Judge Wojcik did not participate in the decision in this case.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elizabeth King,                    :
                    Appellant      :
                                   :      No. 1155 C.D. 2015
            v.                     :
                                   :
Pittsburgh Water and Sewer         :
Authority                          :

## **O R D E R**

**AND NOW**, this 27th day of May, 2016, the order of the Court of Common Pleas of Allegheny County is **AFFIRMED**.


_____
ROBERT SIMPSON, Judge

Elizabeth King,                        :

          Appellant        :

                               :

         v.                    :  No. 1155 C.D. 2015

                               :  Argued:  April 12, 2016

Pittsburgh Water and Sewer   :

Authority                     :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge
               HONORABLE DAN PELLEGRINI, Senior Judge

CONCURRING OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: May 27, 2016

      I concur in the majority's holding that Elizabeth King is not entitled to judgment *non obstante veredicto* or a new trial for the reason that the Pittsburgh Water and Sewer Authority destroyed the rusted sewer grate through which she fell, resulting in bodily injury. She was required to prove prejudice by the Authority's destruction of relevant evidence, and she did not do so.[1]

      I write separately to clarify what is required for a local agency's notice of a dangerous condition. A specific complaint to the Authority about the disintegration of the sewer grate was not necessary to establish notice. To the extent this is suggested by the majority, I disagree with that suggestion. *See* majority slip op. at 31-32 (citing *Kennedy v. City of Philadelphia*, 635 A.2d 1105 (Pa. Cmwlth. 1993), and *Fenton v. City of Philadelphia*, 561 A.2d 1334 (Pa. Cmwlth. 1989)). Instructive is our Supreme Court's decision in *Department of Transportation v. Patton*, 686 A.2d 1302 (Pa. 1997), which held that a local

---

[1] King needed evidence that with the grate, she could have shown that the dangerous condition of the grate was apparent upon reasonable inspection. Alternatively, she needed to show that an expert could not provide such testimony solely on the basis of a photograph.

agency can be found to have constructive notice where the evidence shows that the dangerous condition was "apparent upon a reasonable inspection." *Id.* at 1304. In short, constructive notice does not require a prior complaint about the dangerous conditions.

As an aside, I believe the Authority should reconsider its policy of destroying property involved in a personal injury when it knows that the property may be relevant to a legal claim against it. Spoliation of relevant evidence does not inspire public confidence in government or governmental authorities. The next case of Authority spoliation may result in the sanction that it managed to avoid this time.

_____
MARY HANNAH LEAVITT, President Judge